(No. 30810.—

HANNAH LOW *et al.*, Appellants, *vs.* DEWEY BLAKENEY *et al.*, Appellees.

*Opinion filed January 19, 1949—Rehearing denied May 11, 1949.*

CRAMPTON and THOMPSON, JJ., dissenting.

John R. Dean, of Danville, for appellants.

W. O. Edwards, and Ralph Rouse, both of Danville, for appellees.

Mr. Justice Gunn delivered the opinion of the court:

This suit is brought by the heirs and devisees of Martha J. Naylor to enjoin the trustees of schools of township 18 north, ranges 10 and 11 west, in Vermilion County, and the school directors of school district No. 140, in said county, from advertising or conducting a sale, or removing the school buildings situated on one acre of land used as a school site. After hearing, the circuit court of Vermilion County entered a decree dismissing the complaint, and plaintiffs appeal directly to this court.

The facts are not in dispute. In 1869 Martha J. Naylor made a quitclaim deed to the trustees of schools, and their successors in office, for one acre of land. The deed contained the following clause:

"Said land is hereby conveyed by Quit Claim for school purposes only. And it is hereby understood and stipulated that whenever said one acre of land hereby conveyed is not used any more for School purposes by said Trustees of Schools as above, or their Successors in office, that the said one acre of land hereby conveyed shall revert back to the said Martha J. Naylor, or to her heirs."

No question is raised in this case but that the plaintiffs are the proper parties to bring the suit. A schoolhouse and other buildings were erected upon the land, and it was used for school purposes for many years. After 1945 the schoolhouse was no longer used for teaching pupils, and the trustees of schools therefore took steps to sell the buildings. The plaintiffs as heirs and devisees of the grantor objected to the sale, claiming ownership of the land and the buildings by virtue of the reverter clause in the deed, and instituted the suit. There is no dispute as to the reversion of the land without the buildings. The sole ques-

tion is whether plaintiffs are entitled to the buildings erected upon the lands by the school authorities, or whether said authorities may sell the buildings for the benefit of the school district.

Plaintiffs contend that under the common law the buildings became fixtures and passed with the land. The appellees contend that the reverter provision of the deed applies only to the land itself, and that the school trustees under applicable school laws have authority to sell the improvements that they have placed upon the land with school funds. At the time the deed to the school trustees was made, the statute of 1857, then in force, provided as follows: "The board of trustees of each township in the State may receive any gift, grant, donation, or devise made for the use of any school or schools, or library, or other school purposes within their jurisdiction; and they shall be and are hereby invested, in their corporate capacity, with the title, care and custody of all school houses and school house sites; but the supervision and control of them is expressly vested in the directors of each district in which said property is situated, * * *." Laws of 1857, p. 271.

Section 22 of article 4 of the School Code (Ill. Rev. Stat. 1947, chap. 122, par. 4-22,) provides for the sale of *school sites* or *school buildings,* or *sites with buildings thereon,* or any other real estate, after complying with certain requirements not here in issue. It is conceded that the appellees complied with all of the requirements of the statutes preliminary to authorizing a sale of the buildings on this school site, until stayed by the restraining order of the circuit court. The only question presented is whether the reverter clause in the deed operates to vest in the heirs of Martha J. Naylor title to the buildings as well as the land upon which they are located.

Appellants discuss the issue as though the transaction was between private parties and the ordinary law of fixtures applied to the situation, while the appellees argue

that the language of the statute, as well as the fact that appellees are acting as officers for the benefit of the schools, indicates the reverter clause applies only to what was conveyed at the time and cannot affect the title to the improvements.

The school statutes have made the trustees of schools the holder of title of all school property for the use of the people of the State of Illinois. The scheme and plan of the law was to vest title to lands and buildings in the trustees and the supervision and management in the directors, but the real owner is the people of the State. (*Carter Oil Co.* v. *Liggett,* 371 Ill. 482.) Other sections of the school statutes provide for leasing land, consolidation of districts, increasing the size of districts, and reducing the number of school buildings, or increasing the capacity thereof, all of which have their place in the public school system devised by the General Assembly.

For the accomplishment of all of the purposes designed, and perhaps others, the law provided that the trustees in their corporate capacity acquired title to all "school houses," and "school house sites." The language placed a separate title to the house and the sites in the school trustees. Since the statute authorizes trustees of schools to receive gifts and grants of property which, if given for limited purposes, may be subject to reverter if the purpose is abandoned, it is fair to infer that the legislature had this general principle in mind of severing the title to the buildings from the building sites, and vesting it separately in the school trustees. The natural result of an abandonment of school purposes in such a case would affect only the property which was acquired for the site. This provision of the law must have been contemplated by the parties to the deed when it was delivered, since one is presumed to take into consideration any particular law applying to the contract under consideration. (*Belleville Advocate Printing Co.* v. *County of St. Clair,* 336 Ill. 359.) At the time the deed was deliv-

ered the grantor knew the trustees would take title to the land as land, and that title to any building afterward erected upon the premises would vest in the trustees, and also must have known that the said trustees by virtue of said severance could dispose of the buildings separately, or the sites and the buildings together; and also must have realized that the one property would be subject to any condition placed in the deed, while the other would not.

The law of 1865, in effect at the time of the transaction, has been substantially the same since 1841, and is the same today, with respect to the severing of title of school property vested in school trustees. (Ill. Rev. Stat. 1947, chap. 122, par. 4-21.) Without doubt the particular language used in these statutes was for a specific purpose, and the General Assembly must have contemplated that changes in conditions that would affect the administration of school laws might require larger or more school houses and different facilities for teaching, which has been so noticeable in the last half century; and to effectuate such purposes it provided for the severance of titles to school property and separate powers of sale, or sale in combination for all school purposes.

Thus, if the population or territory of a district became too small to support a school the building could be sold, or transferred to another location. Or, if, as the case seems to be at present, the law was designed to furnish education in one place for a considerable territory, many of the sites could be abandoned for school purposes, enabling the school trustees to sell together or separately school property for the benefit of the school fund. Of course, if there was a reverter clause in the deed to the site they could realize only from the sale of the schoolhouse proper, and no doubt this was one of the objects in so framing the law.

When we seek the intention of the parties from the language of the deed we must consider the time it was made, the use intended, and the law applying to the special

intended use of the property. The evidence discloses that the building upon this particular site was large and sub-stantial, and must have cost several thousand dollars. It also shows that the grantor received $50 for one acre of land, which at the time was a substantial consideration. These facts alone rebut any actual intention that the re-verter clause should include any buildings, because to so infer would be to imply a right to make a gift, wholly beyond the power of school trustees. (*Board of Education* v. *Alton Water Co.* 314 Ill. 466.) As a matter of fact, the deed of conveyance under consideration implies strongly that the land only in its then condition was to revert, since the language specifically limits the reverter to the exact ground conveyed by the use of the words "whenever said one acre of land hereby conveyed is not used * * * the said one acre of land hereby conveyed shall revert."

In *Hackett* v. *Trustees of Schools,* 398 Ill. 27, we show that similar language "contemplated that the right or option to repurchase related only to the land. Both parties to the deed were charged with notice of the power of the school trustees * * * to sell a school site, school buildings or site with buildings thereon." We are strongly of the opinion that not only was it the actual intent of the parties to the deed in question here to exclude buildings from the reverter clause, but that it would have been a breach of trust upon the part of the trustees to intend otherwise. The intent of the parties is the controlling element in determining whether improvements are removable or otherwise. *Hopwood* v. *Green,* 375 Ill. 167; *National Bank of the Republic* v. *Wells-Jackson Corp.* 358 Ill. 356.

However, if there be any remaining doubt about the construction we have given above to the school law, it is settled by *Hackett* v. *Trustees of Schools,* 398 Ill. 27, in which we held that where the deed for school purposes con-tained a privilege to buy back the site for $75, in case it was abandoned, such privilege did not include the buildings.

Appellants argue that there is a difference between a case where a privilege is placed in a deed and provision for reverter. We do not think there is a sound distinction between the cases. Both deeds conveyed a determinable fee; in both deeds the condition was subsequent, depending upon the cessation of use for school purposes. In the *Hackett case* the privilege or option was binding. (*Wagner* v. *McClay,* 306 Ill. 560.) So, we have only this difference between the two conditions,—in the one $75 must be paid to obtain the reverter, and in the other case nothing. In the *Hackett case* we held there were no rights obtained in the school buildings under the privilege clause. There can be no distinction between the two cases. Both involve school property; both involve a deed which would include improvements unless the law or facts would take them out of the operation of the rule. Both deeds contained a condition subsequent and both deeds within their own language create an inference not to include the buildings upon reverter. And, above all else, in each instance the law in force vested the title to the buildings in the school trustees, not subject to the condition affecting the school site. There is no distinction in the legal principles involved, and the result must necessarily be the same.

We think the General Assembly vested the trustees of schools with specific power to hold title to school buildings separate from the title by which they hold title to school sites; and also vested power in said trustees to sell them separately. If such separate sales of buildings results in the abandonment of the use of the premises for school purposes, the condition annexed to the use of the site will be unaffected. The vesting of title in the trustees of all school houses and all school sites, and the power to sell separately school houses or school sites, or school sites with school houses, clearly indicates the legislature intended them to be considered severed for title or sale. The decree of the circuit court carried out not only the intent of the Gen-.

eral Assembly, but, also, what appears to have been the actual intent of the parties.

The decree is affirmed.

*Decree affirmed.*

Mr. JUSTICE CRAMPTON, dissenting:

I cannot agree with the conclusion reached by the court, nor with the reasoning advanced in its support. It is a general rule of the common law that buildings erected on lands are presumed to be a part thereof and belong to the owner of the premises. (*Matzon* v. *Griffin*, 78 Ill. 477.) By agreement between the parties, buildings or other improvements placed upon real estate can, of course, be made separable from the land and disposed of as personal property. But the intention to so treat them must affirmatively appear. In the absence of such an agreement a reversion retained in a deed carries with it the right to the improvements erected on the land. *Williams* v. *Kirby School Dist.* 207 Ark. 458, 181 S.W. 2d 488; *Webster County Board of Education* v. *Gentry*, 233 Ky. 35, 24 S.W. 2d 910.

If, as the court says, a consideration of $50 for one acre of land and the subsequent erection of a large and substantial building thereon are alone sufficient to rebut an actual intention that the reverter clause was to include the building, then it would seem that a substantial revision has been made in the law of real property. Neither the opinion of the court, the briefs of counsel, nor my own research has disclosed any authority in support of the proposition. If such is the law, then private parties must now draw their instruments of conveyance with careful attention to the possible value of any future improvements thereon and the adequacy of the price paid for the land. Structures of small value will revert with the land, while those of large and substantial proportions will not. And all without reference to an absence of provisions concerning the matter.

It is no answer to plaintiffs' contention to say that school trustees had no power to make a gift, and that this lack

of power evidences an intention that the buildings were not to revert with the land. It is no doubt true in the ordinary transaction between private individuals, that both parties are aware the grantee has no desire to make a gift. But if inability to make a gift is a test of intention so also must be a lack of desire to do so. Such a rule would destroy the law of fixtures. The reversion of both land and building is not the completion of a "gift" of the building to the grantor. The original transaction must be presumed to have been entered into in the light of ordinary rules of property law, and the terms adjusted accordingly.

Even if the school authorities acted illegally in purchasing property subject to a possibility of reverter and then erecting structures thereon at its own expense, such violation could not operate to impair the property rights of the grantor. To give them the right to remove the buildings where a reversionary provision is accepted would be to give judicial sanction to their violation of the law. (*Webster County Board of Education* v. *Wynn,* 303 Ky. 110, 196 S.W. 2d 983.) In the case cited the facts were similar to those in the case at bar. At the time of the conveyance a Kentucky statute provided in part that in the acquisition of land as a site for a schoolhouse the title should be made in fee simple to the county board of education. It was held that the failure of the school board to conform to this law did not affect the right of the grantor's successors in title to both the land and the building upon abandonment of the property for school purposes.

However, defendants have not shown any violation of law in the case at bar. The school trustees did not indirectly give away school property. The parties to the original transfer must be presumed to have acted with reference to well-established rules of property law. The cost of the school buildings, like the cost of grading or other improvements to the land itself, were in effect a part of the price paid for the school premises.

Neither the statute of 1865 nor section 22 of article 4 of the School Code makes any reference to the nature of the title under which property used for school purposes shall be held, and neither makes any distinction between ownership of buildings and ownership of sites. The former prescribes the respective functions of the board of trustees and the directors. The latter simply provides for the sale of school property, and specifies the procedure therefor. In the majority opinion of the court, not only does the statute provide the basis for a presumed intention that the building was not to revert, but it even places in the trustees a separate title to the building and the land. Thus, presumably, a deed by the trustees containing only a legal description of the land would fail to convey the building thereon to a purchaser! The consequences of such a rule to all those who have accepted such conveyances from school trustees are serious indeed.

The majority opinion asserts that any remaining doubt about the construction given to the school law is settled by *Hackett* v. *Trustees of Schools*, 398 Ill. 27. In that case a deed conveying one acre of land to school trustees provided that in case the premises were abandoned for school purposes the owner of the tract from which the acre was taken should have the privilege of purchasing the acre for the same price at which it was sold. In the instant case there is no evidence that a subsequent sale of school property was contemplated at the time of the conveyance. There was simply a deed containing a reversionary clause by which the estate of the school trustees automatically terminated upon the abandonment of the premises for school purposes. In the *Hackett case,* on the other hand, no interest in the land was retained by the owner of the adjoining tract. The holder of an option to purchase does not thereby have an interest in the land itself. (*Keogh* v. *Peck,* 316 Ill. 318, 328.) In determining the extent of the property covered by the option we considered the fact that a future sale

would be necessary in order for the adjoining owners to acquire the school land, and that sales of school property are governed by statute. Such considerations have no application where the grantor simply retains a possibility of reverter. The distinction was recognized in the *Hackett case*, where we said: "It will be observed that the deed was also an option contract. It was not the ordinary deed with a reversionary clause by which the land, upon the happening of a contingency, did, without more, revert to the original grantors, but it contained a contract that they might, if they chose, repurchase it at the exact price they received for it. The land did not revert to them by the happening of the contingency. It remained the property of the school trustees, burdened with the option contract." It hardly seems open to question that a material distinction exists between the deed in that case and the deed in the case at bar. Here the property reverts back to the grantor upon the happening of the contingency, without more; there it required the acceptance of an offer—or an actual sale—before the owner of the adjoining land could acquire the tract. A statute governing the mode of selling property used for school purposes has a direct application in the latter situation. It has none in the former. Hence the difference between the two conditions is not solely one of price. It is the difference between a possibility of reverter and an option to purchase, a distinction which is not merely one of words.

It may be socially desirable that buildings placed by the State upon its property shall become the sole property of the State, regardless of the incidents of its ownership of the fee. But until the legislature so provides in explicit terms, and within the confines of the constitution, it is inadvisable to vary ordinary rules of property law wherever one of the parties is a public body. There are few fields of the law in which certainty is of greater importance than in that of real property. A rule which in effect renders the

incidents of a conveyance dependent upon considerations of cost, which may fluctuate with the passing of years, or upon exceptions inferred from general statutory language, can result in nothing but confusion and uncertainty.

I think the decree of the circuit court should be reversed.

Mr. JUSTICE THOMPSON joins in the foregoing dissenting opinion.