(No. 32101.—

LESTER W. MINER *et al.*, Appellees, *vs.* RALPH YANTIS *et al.*, Appellants.

*Opinion filed November 27, 1951.*

FRIBLEY & LACHARITE, of Pana, and ARTHUR J. STEIDLEY, of Shelbyville, for appellants.

E. C. EBERSPACHER, of Shelbyville, for appellees.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

This is an appeal by the defendants from a decree of the circuit court of Shelby County, setting aside a deed to a school site, dated November 1, 1947, by trustees of schools of township No. 12 north, range No. 4 east of the Third Principal Meridian, Shelby County, Illinois, to the defendant Ralph Yantis. The decree also set aside a bill of sale to a school building on said site, executed by the trustees to the defendant Yantis, and enjoined him from removing the school building from the premises and confirmed title to said site and the building thereon in the plaintiffs.

The record discloses that plaintiffs are the owners of record title to the north one-half of section 20, township 12

north, range 4 east of the Third Principal Meridian in Shelby County, Illinois, upon which there was located a schoolhouse site of approximately one acre. Said site had never been conveyed to the defendant school trustees, and plaintiffs and their predecessors in title have always paid taxes on all of the land including the school site. For many years there was a wooden school building on said site. This building was erected on a concrete foundation with a concrete basement and was so constructed that under the general common-law rule it would be presumed to be a permanent part of the real estate. The premises ceased to be used for school purposes sometime prior to 1947. On November 1, 1947, pursuant to an election held for that purpose, the defendant school trustees held a public sale of the school site and the buildings thereon. The site and buildings were sold separately and the defendant Yantis was the purchaser of both the land and the schoolhouse building. Thereupon the trustees of schools executed the deed and bill of sale in question. No question is raised concerning the validity of the proceedings leading up to the sale.

Plaintiffs' complaint alleged the foregoing facts and claimed title to the tract in question by reason of an uninterrupted chain of conveyances since letters patent issued by the United States, and claimed title to the building as a permanent fixture upon the premises.

Defendants filed an answer denying plaintiffs' title to the land and building and alleged that by operation of law the buildings upon the school site were to be considered as personal property in the hands of the school trustees, and further alleged certain facts in an effort to establish title to the land in the trustees of schools by adverse possession. The following quotation contains all of the material allegations of the answer relative to adverse possession: "These Defendants further answering aver that the then acting Directors of School District No. 2  *  *  *

for and on behalf of the Defendant Trustees of Schools * * * prior to the year 1891 went into possession of said real estate * * * and a schoolhouse was erected on said Tract by the then acting School Directors aforesaid, which schoolhouse was thereafter replaced by the present existing frame schoolhouse on or about the year 1917 and that same and said tract whereon the same was situated has been in the possession of the School Directors of said District aforesaid for and on behalf of the Defendant Trustees of Schools * * * from the year 1890 up to November 1, 1947, who claimed to own the same, and that said Trustees sold the same to the Defendant, Ralph Yantis on the first day of November, 1947, and that same has been in the possession of said Ralph Yantis from November 1, 1947, to the present date and that since the year 1891 to the present date, said premises have been occupied by the Defendant Trustees of Schools or the Defendant Ralph Yantis, actually, distinctly, continuously, visibly, openly, notoriously, undisputedly, and adversely and that said Defendant, Ralph Yantis, now owns the same and that knowledge of the hostile claims of the Defendant Trustees of Schools were asserted and made known to Plaintiffs or their predecessors in title in the year of 1907 prior to the trial of the Partition proceeding herein mentioned, to one Thomas Miner, husband of Minnie B. Miner, one of the parties to the Partition proceedings mentioned in Paragraph 23 supra, and that said Thomas Miner appeared and testified thereto as a witness on behalf of Plaintiff Minnie Miner in said Partition proceedings aforesaid."

Upon motion of plaintiffs the foregoing allegations were stricken from defendants' answer. Defendants insist that this was error, while plaintiffs insist that the trial court's action was correct.

Plaintiffs argue that the powers of school trustees are so limited that they do not have the power to acquire realty in fee simple absolute, except in two cases: (1) to take title

in satisfaction of a judgment, and (2) to take title in settlement of debts; and insist that in only these two cases did the legislature give them the power to take title without limitation. They insist that in all other instances the trustees cannot take title to real estate in fee simple, but that they are strictly limited in all cases to such interest as is absolutely necessary for school purposes. With this contention we cannot agree. If this reasoning were followed, trustees of schools could never obtain anything but an easement upon land upon which it is desired to erect a schoolhouse. This is too narrow a construction of the statutory power of school trustees to "acquire real estate for school purposes." We are of the opinion that trustees of schools may, by proper grant, take title in fee simple absolute to real estate to be used for school purposes.

Plaintiffs also argue that, as a matter of law, school trustees cannot acquire title to lands by adverse possession, and cite the case of *Superior Oil Co.* v. *Harsh*, 39 F. Supp. 467, in support of this contention. That case is not authority for that proposition, as we shall demonstrate later in this opinion. While no case has come to our attention in which we have held that trustees of schools can acquire title by adverse possession, we have recognized the principle that possession of lands by the board of education of the city of Chicago can be adverse so as to ripen into a fee-simple title. (*Foote* v. *City of Chicago*, 368 Ill. 307.) It is the general rule that governmental entities may acquire title by adverse possession. 1 Am. Jur. 801.

The case of *Superior Oil Co.* v. *Harsh*, 39 F. Supp. 467, is not authority for the proposition that trustees of schools cannot, in any case, acquire fee-simple title to lands by adverse possession. That case involved an Illinois school site which was entered upon in 1886. There, as in the case at bar, plaintiffs were owners of the record title and no grant or conveyance of any kind had ever been made to the school authorities. At the time the land was entered

upon, there was in effect in this State an eminent domain statute which provided that school authorities could select schoolhouse sites and they should "have the right to take the same for the purpose of a schoolhouse site either with or without the owners' consent." It was further provided as a later contingency that in case the compensation to be paid for the site taken could not be agreed upon by the parties, it should then be determined by a court action. There was no evidence that the school trustees procured any other kind of title or that they ever made claim to any other kind of title. The court found that under such circumstances it was obvious that the school trustees took possession of the school site pursuant to the eminent domain statute either with or without the owner's consent. The court held that, inasmuch as the land was taken by the exercise of the right of eminent domain, only such an estate vested as was necessary to accomplish the purpose in view, and since an easement was sufficient to accomplish this purpose no greater estate vested, and the trustees were without the right to lease the school site for oil-and-gas purposes. This holding is in accord with the general rule of law recognized in Illinois that the grant of power to take the land of an individual by eminent domain is strictly limited to the taking of such an estate as may be specifically authorized by the statute itself, or if the estate is not specifically defined by the statute, then the limitation is to such an estate as is absolutely necessary to the purpose in view. (*Miller* v. *Comrs. of Lincoln Park*, 278 Ill. 400; *Tacoma Safety Deposit Co.* v. *City of Chicago*, 247 Ill. 192.) The holding in the *Superior Oil Co. case*, therefore, is limited to cases where the trustees enter upon land with permission of the owner or acquire title by eminent domain. In such cases the presumption of law is that the possession of real estate is subservient to the rights of the owner of record title, and, where the possession has been consistent with his title, nothing but a clear, unequivocal

and notorious disavowal of the title of the owner will render the possession, however long continued, adverse to him. *Mitchell v. Illinois Central Railroad Co.* 384 Ill. 258.

In the case at bar, the exact date of entry by the trustees upon the school site was not set forth in the answer, but the allegation was that defendants had been in possession since 1890 or 1891. At that time the eminent domain statute cited in the *Superior Oil Co. case* was in effect. There was no allegation that possession was hostile from its inception and there is nothing in the record to indicate in what manner the trustees came into possession. In the absence of a showing to the contrary, it will be presumed that the trustees took possession, either with or without the owner's consent, under the authority granted them by the eminent domain statute then in force. This being true, their possession was subservient to the rights of the record owner and consistent with his title, and nothing but a clear, unequivocal and notorious disavowal of the title of the owner could thereafter render their possession adverse to him. (*Mitchell v. Illinois Central Railroad Co.* 384 Ill. 258.) An examination of the material allegations of the answer fails to disclose any such clear, unequivocal and notorious disavowal of the title of the record owners, and the record is barren of any testimony showing any clear and positive assertion of an adverse right until the time of the sale in 1947. On the contrary, the evidence discloses that in 1917, when a new schoolhouse was erected on the premises, the then record owners were asked for an additional strip of land to facilitate the delivery of fuel to the new building and they obligingly moved their fence approximately 10 feet, thus enlarging the schoolhouse site. This certainly is not consistent with a hostile or adverse claim, and use or occupancy by the permission or consent of the owner cannot ripen into a title by adverse possession.

It follows that the trial court did not err in striking that part of the answer, and that part of the decree of the

trial court setting aside the deed of November 1, 1947, to Yantis is correct.

Plaintiffs insist that since the buildings are permanently connected to the soil they are real property under the general rules of the common law. Defendants insist that under applicable school laws the general common-law rule of fixtures does not apply and that the buildings should be treated as personal property in the hands of the trustees.

In *Hackett* v. *Trustees of Schools,* 398 Ill. 27, we held that where the grantor in a deed to school trustees placed in the deed an option to repurchase the land when it ceased to be used for school purposes, the trustees had the right to sell and remove the buildings therefrom after the school site had been abandoned and that the option of the purchaser did not include the buildings.

In *Low* v. *Blakeney,* 403 Ill. 156, and *Brown* v. *Trustees of Schools,* 403 Ill. 154, we held that where a deed conveys a school site to trustees with a provision that when it is no longer used for school purposes it shall revert to the grantor or his heirs, the heirs of the grantor cannot claim the buildings as fixtures when the school site is abandoned, but the trustees retain title to the buildings and may sell them for the benefit of the school fund.

By our decisions in the three cases last above cited we have established the principle that the language of section 22 of article 4 of the School Code, (Ill. Rev. Stat. 1949, chap. 122, par. 4-22,) which has been essentially the same since 1841, placed a separate title to school buildings and school sites in the school trustees. As pointed out in those cases, the statutes have made the trustees of schools the holders of title to all school property for the use of the people of the State of Illinois. Certain sections of the School Code provide for the consolidation of school districts, annexation and detachment of territory, and increasing or decreasing the number of school sites and buildings. Other sections of the statute authorize the trustees to

lease school sites for any period of time not exceeding 50 years, with or without an option to purchase the property and with or without a clause to the effect that title to the leased property shall vest in the trustees at the expiration of the lease, and to receive gifts and grants of property which, if given for limited purposes, may be subject to reverter if the purpose is abandoned. In the case of *Low* v. *Blakeney*, 403 Ill. 156, we held that it is fair to infer that the legislature had this principle in mind of severing the title to the buildings from the building sites and vest it separately in the school trustees, so that the natural result of an abandonment of school purposes in such a case would affect only the property which was acquired for the site and would leave the trustees free to sell the buildings for the benefit of the school fund. To infer otherwise would imply a right in the trustees to make an unauthorized gift of school property upon the termination of a lease or abandonment of a site for school purposes.

Plaintiffs contend that there is a difference between the cases last above cited and this case, in that in those cases there was a deed from which the intention of the parties was determined, while in this case defendants were merely tenants at will or held only an easement for school purposes acquired by reason of the eminent domain statute. In those cases we held that the parties to the contracts were charged with notice that the title to any buildings erected on the premises would vest separately in the trustees, and that the trustees, by virtue of such severance could dispose of the buildings separately. We are of the opinion that the principle is the same whether the site is acquired by deed, written or verbal lease, by permissive use, or by the right of eminent domain. There is no distinction in the legal principles involved and the result must be the same.

Plaintiffs also argue that there is no evidence in the record that the buildings on the site were paid for with school funds or that they were built by the school district.

It is undisputed that at the time of the sale the trustees were in possession of the buildings and claimed title to them, that they did sell them and executed and delivered a bill of sale to the defendant Yantis, under which he claims title. If plaintiffs had a better title the burden was upon them to make proof of the same. This they have failed to do.

For the reasons stated, we hold that the trial court erred in setting aside the bill of sale to the school building.

That part of the decree of the trial court confirming title to the school site in plaintiffs is affirmed. That part of the decree setting aside the bill of sale to the school building and making the injunction permanent is reversed and the cause is remanded to the trial court, with directions to enter a decree in accordance with the views expressed in this opinion.

*Affirmed in part and reversed in part and remanded, with directions.*