### KELLY et al. v. BOWMAN et al.
#### Civ. 1036–D.

United States District Court, E. D. Illinois.

May 13, 1952.

Henry T. Dighton, Monticello, Ill., for plaintiff.

Hutson & Hutson, by N. E. Hutson, Monticello, Ill., for defendant Bowman.

Hawbaker & Sievers, by E. J. Hawbaker, Monticello, Ill., for defendant Trustees of Schools.

PLATT, District Judge.

The court finds the pertinent facts bearing upon the legal problems in this case to be as follows. In August, 1906 Trustees of Schools, Township 19, Range 6, of the County of Piatt and State of Illinois, pursuant to the statutes of the State of Illinois, filed a condemnation suit to take approximately two acres of land from the then owner, Henry L. Timmons "to be taken for a school site". The jury fixed the fair cash market value of the land taken and crops thereon at $355.25. The Trustees paid this amount in accordance with the judgment entered. A schoolhouse and appropriate buildings were constructed on the premises. The Trustees by proper statutory procedure on January 19, 1952 sold all of their interest in the two acres of ground and buildings thereon at public auction to Floyd E. Bowman, one of the defendants herein. Floyd E. Bowman in turn contracted to sell the buildings and ground to Forrest Hise, who has entered his appearance in this cause and adopts all admissions and stipulations by the defendants Floyd E. Bowman and the Trustees of Schools. The dispute arises in this suit over the ownership of the land and the buildings, as the Trustees of Schools have abandoned the premises for school purposes. The plaintiffs are successors in title to the interest, if any, of Henry L. Timmons, in the land and claim the buildings thereon also. All of the facts, including jurisdiction of the subject matter and the parties, have been stipulated or admitted by the pleadings. Therefore, the legal questions are presented to this court of determining in whom the title to the two acres now stands and who has the ownership of the buildings.

The first point to be investigated is what title did the Trustees take by the condemnation proceedings. The Trustees of Schools are bound to act in accordance with the statutes applying to them. The statute provided that after election they were au-

thorized to issue bonds and purchase the site selected. Such an election was held. The applicable statutes in force at the time the school site was acquired are as follows:

Ill.Rev.Stat.1905, Chap. 122, Sec. 151 provides for a vote of the people upon the selection of a school site and that:

"The site so selected by either of the methods above provided shall be the school house site for such district; and said district shall have the right to take the same for the purpose of a school house site either with or without the owner's consent by condemnation or otherwise."

Chapter 122, Sec. 152 provides as follows:

"In case the compensation to be paid for the school house site mentioned in the preceding section can not for any reason be agreed upon or determined between the school directors and the parties interested in the land taken for such site, then it shall be the duty of · the directors of such district to proceed to have such compensation determined in the manner which may be at the time provided by law for the exercise of the right of eminent domain * * *."

Chapter 47, Sec. 10 provides:

"The judge or court shall * * * make such order as to right and justice shall pertain, ordering that petitioner enter upon such property and the use of the same upon payment of full compensation * * *" which "shall constitute complete justification of the taking of such property * * *."

The Trustees complied with the statutes in their condemnation proceedings. The petition provided in part that as to the " * * tract of land proposed to be taken for a school site * * * it was decided to proceed at once to condemn said land for said school site * * * and fix the compensation to be paid [the then record title holder] for said land in accordance with the provisions of the Statute in such case made and provided." The instructions to the jury indicated that the jury was to fix the compensation for " * * * land actually taken for school site * * *". Section 151 provides and limits the taking

of lands for the purpose of a schoolhouse site. There is no intention expressed by the legislature in this Act for the school district to obtain a fee simple title. It is quite clear that the Legislature intended that the Trustees were to exercise their rights of eminent domain in obtaining the school site for school purposes only.

In Superior Oil Co. v. Harsh, D.C., 39 F. Supp. 467, affirmed 7 Cir., 126 F.2d 572, there was a suit to enjoin operation of an oil well on a school site brought by oil and gas lessees from the original owner against the lessees of the school trustees. The court granted the injunction. No deed to the tract was produced nor was there any evidence that one ever had been executed; there was no record of any eminent domain proceedings or of any payments for the land. The court there said that it made no difference whether payments were made or not, and in commenting on the statutes quoted above said, 39 F.Supp. at page 470:

"It is obvious from the record that, in pursuance of this statute, the school trustees did take the school site, with or without the owner's consent. * * * [T]he taking amounted to procuration, by virtue of eminent domain, of the site for the purposes contemplated by the statute. * * * [T]he title in its inception was the title obtainable by eminent domain [even though acquired informally rather than by court action] * * *. The title of the school trustees was the statutory title granted by the legislature, title by acts of eminent domain, a taking with consent of the owner for the use of the inhabitants of the township for school purposes."

In another case, where the trustees of schools occupied the premises for a school site without formal condemnation proceedings and attempted to convey the land, the Illinois Supreme Court held the trustees were limited to what was necessary for school purposes (i. e., only an easement). Miner v. Yantis, 410 Ill. 401, 102 N.E.2d 524. In this case, in commenting upon the Superior Oil Company case, the court said, 410 Ill. at page 406, 102 N.E.2d at page 527:

"This holding is in accord with the general rule of law recognized in Illi-

nois that the grant of power to take the land of an individual by eminent domain is strictly limited to the taking of such an estate as may be specifically authorized by the statute itself, or if the estate is not specifically defined by the statute, then the limitation is to such an estate as is absolutely necessary to the purpose in view. * * *"

From the principles manifestly expressed in these two decisions this court must hold that the Trustees of Schools had only an easement and when they abandoned the premises for purposes of a school site the title to the two acres reverted to the plaintiffs, holders of the record title.

Counsel for Trustees maintains that the Drainage Act, Chapter 42, Para. 327, which allows sanitary districts to "acquire by purchase, condemnation or otherwise, any and all real and personal property, right of way and privilege * * * that may be required for its corporate purposes * * *", is similar to the powers given to the school trustees under Sec. 14–7, Chap. 122, Ill.Rev.St. The present site was obtained by the Trustees under Chapter 122, Secs. 151 and 152, quoted above, although the substance of these statutes is the same as the present Sec. 14–7, Chap. 122. A reading of these two statutes obviously refutes counsel's argument. The defendant Trustees' brief cites Sanitary District of Chicago v. Manasse, 380 Ill. 27, 42 N.E.2d 543 in which the court interprets the language of the drainage statute referred to. At page 32 of 380 Ill., at page 545, of 42 N.E.2d the Supreme Court of Illinois there said:

"There is no limitation or restriction on the right of the State, either to take land itself or to authorize municipalities to do so, except that it shall never be taken for any use other than a public use, and in no event, without just compensation. This leaves the legislature free to determine the extent of the interest in the land which the State itself may take, or *which it may authorize municipalities to take, by eminent domain, for public purposes.* (Italics supplied.) In re City of Rochester (In re Robinson), 137 N.Y. 243, 33 N.E.

320; Brooklyn Park Com'rs v. Armstrong, 45 N.Y. 234, 6 Am.Rep. 70; Higginson v. Slattery, 212 Mass., 583, 99 N.E. 523, 42 L.R.A.,N.S., 215; Flagg v. Town of Concord, 222 Mass. 569, 111 N.E. 369; Foust v. Dreutlein, 237 Pa. 108, 85 A. 68.

"* * * The statute provides the sanitary district 'may acquire by * * condemnation or otherwise, any and all real * * * property, right-of-way and privilege * * * and when not longer required for such corporate purposes, * * * may sell, vacate, release or otherwise convey any and all such real * * * property,' etc. The authority is not confined to acquiring an easement such as a right-of-way, but includes any real property or all real property. Real property is defined as including all interest held or claimed in lands in fee, for life or for years. Cottingham v. Springer, 88 Ill. 90; Brandies v. Cochrane, 112 U.S. 344, 5 S.Ct. 194, 28 L.Ed. 760; Floyd v. Carow, 88 N.Y. 560; Murphy v. Superior Court, 138 Cal. 69, 70 P. 1070; Horney v. Price, 189 N.C. 820, 128 S. E. 321."

Again examining the school statute, the Illinois legislature granted no such authority to school districts. The words clearly demonstrate that the premises condemned shall be acquired for the purposes of a school house site either with or without the owner's consent by condemnation or otherwise. The comparison of these two statutes only strengthens the court's conviction that the school district only obtained an easement upon the two acres in question for the purposes of a schoolhouse site.

Coming now to the proposition of the ownership of the buildings this court is again completely advised by the decisions of the Illinois Supreme Court. In Hackett v. Trustees of Schools, 398 Ill. 27, 74 N.E. 2d 869, there was a suit for injunction to restrain the destruction or removal of school buildings. Plaintiff's predecessor in title had conveyed the land to the school district with an option in the deed to repurchase when abandoned for school purposes. The court denied the injunction,

holding that the reversionary interest did not include the improvements upon the school site. In Low v. Blakeney, 403 Ill. 156, 85 N.E.2d 741, there was a suit to enjoin the sale or removal of school buildings. Here the plaintiffs were heirs and devisees of the grantor of the school site and the deed to the school district contained a provision for a reverter of the lands upon abandonment for school purposes. The decree denied the injunction. The court's holding was largely a matter of the construction to be applied to the intention of the parties in the execution of the deed, but in determining that intention the court implied that the deed was made in the light of the statutes vesting a separate title in trustees of "schoolhouses" and "school sites". The court further held that the natural result upon the abandonment of a school for schoolhouse purposes in such case would affect only the property which was acquired for the site, and 403 Ill. at page 162, 85 N.E.2d at page 745, the court there said:

"We think the General Assembly vested the trustees of schools with specific power to hold title to school buildings separate from the title by which they hold title to school sites; and also vested power in said trustees to sell them separately."

To the same effect is Brown v. Trustees of Schools, 403 Ill. 154, and 85 N.E.2d 747, and in Miner v. Yantis, 410 Ill. 401, at page 409, 102 N.E.2d 524, at page 528 the Supreme Court of Illinois, pointing to the cases which hold title to the improvements is separate from that to the realty, said:

"We are of the opinion that the principle is the same whether the site is acquired by deed, written or verbal lease, by permissive use, or by the right of eminent domain. There is no distinction in the legal principles involved and the result must be the same."

In the instant case there can be no distinction made from the principles set forth in these cases. The title acquired by the School Trustees by eminent domain was a determinable fee. In each case cited the trustees abandoned the site for school purposes and the buildings were held to be their property to be disposed of by sale, according to statute. There can be no other conclusion; while the plaintiffs are entitled to the two acres of land under their reversionary right, they are not entitled to the school buildings. The court therefore concludes that the defendant Bowman may remove the buildings. As provided by the stipulation, he may do so without incurring damages, providing they are removed by June 20, 1952. The court has omitted discussion of other points as they are without merit. Costs are apportioned one-half against the plaintiffs and one-half against the defendant Bowman.

Decree may be submitted in accordance with the findings of fact and conclusions of law herein expressed.