2 Ill. App.3d 1009 (1971)
278 N.E.2d 431
TRUSTEES OF SCHOOLS OF TOWNSHIP 42, COOK COUNTY, for use of BOARD OF EDUCATION, SCHOOL DISTRICT NUMBER 57, COOK COUNTY, Petitioner,
v.
GERALD A. SCHROEDER et al., Defendants-Appellants  (WILBERT J.J. WAHLER and DANIEL W. PECYNA, Petitioners-Appellees.)
No. 54397.
Illinois Appellate Court  First District.
November 16, 1971.
*1010 John E. Juergensmeyer, of Elgin, and Walter R. Stewart, of Champaign, for appellants.
*1011 Hinshaw, Culbertson, Moelmann, Hoban & Fuller, and Samuel Papanek, all of Chicago, for appellees.
Affirmed in part, and reversed and remanded in part.
Mr. JUSTICE STAMOS delivered the opinion of the court:
This is an appeal from an order granting summary judgments in favor of appellees on their petition for attorneys' fees and on appellants' counter-claim for legal malpractice.
The petition and counter-claim stem from a protracted history of litigation by appellants, Mr. and Mrs. Gerald Schroeder, relating to a condemnation action instituted by the Trustees of Schools in 1959. This action was commenced pursuant to the eminent domain authority conferred upon school districts by Ill. Rev. Stat. 1959, ch. 122, par. 7-17. The Schroeders retained Wahler & Pecyna to defend the condemnation suit. The trial court denied their traverse, and a jury verdict of $267,088.33 was returned.
On post trial motion the trial court ordered a remittitur of $42,088.33. The Schroeders refused to file a remittitur and appealed the resulting order granting a new trial. The Supreme Court reversed and judgment was entered on the initial verdict. (Trustees of Schools v. Schroeder (1961), 23 Ill.2d 74.) The trial court complied with this order, awarding a sum of $280,936.10, the amount of the verdict plus costs and interest. The court entered a further order finding that the judgment award had been paid to the County Treasurer and that fee simple title was vested in the Trustees and empowered the Trustees to take possession of the property. On December 13, 1961, the Schroeders were evicted and the Trustees took possession.
On their second appeal taken to the Supreme Court, the Schroeders, through their attorneys, Wahler & Pecyna, unsuccessfully raised as the sole issue, "whether a school district governed by article 7 of the School Code, (Ill. Rev. Stat. 1959, ch. 122, pars. 7-1 to 7-23) is prohibited from taking land by eminent domain within 40 rods of the owners' dwelling." (Trustees of Schools v. Schroeder (1962), 25 Ill.2d 289, 290.) The Schroeders retained new counsel for a third appeal in which they raised a number of issues, including whether the pertinent eminent domain statute authorized the granting of a fee simple absolute interest as opposed to a lesser estate. The Supreme Court refused to rule on the merits of this appeal, holding that each of the arguments presented could have been raised in the second appeal and, not being raised, were deemed to be waived.
Further appeals arising from the original condemnation action were subsequently pursued in state and federal courts, but are irrelevant to the specific issues before use.
*1012 On June 28, 1962, Wahler & Pecyna served a Notice of Attorneys' Lien upon the Treasurer of Cook County, claiming fees for representing the Schroeders in the condemnation action and in the first two appeals. On December 26, 1962, in an action supplementary to the condemnation cause, Wahler & Pecyna petitioned the circuit court to order the County Treasurer to pay them the sum of $22,265.17 from the condemnation award still retained by that office. In 1968 petitioners filed an amendment to their petition for attorneys' fees, seeking in a second count the sum of $34,530.34 plus interest of $9,802.70 for a total of $44,333.04. In the interim the Schroeders had filed a counter-claim, Count II of which alleged malpractice against Wahler & Pecyna and sought $1,000,000 in damages.
Wahler & Pecyna moved for summary judgment on Count II of their petition for an attorneys' lien and fees and for summary judgment on Count II of the Schroeders' claim for malpractice. Both motions were granted. An attorneys' lien for $47,083.63 was allowed, and the County Treasurer was ordered to disburse that sum from the condemnation award. It is from these orders that the Schroeders have appealed.
 1 If the pleadings, discovery depositions, exhibits and affidavits present a genuine issue as to any material fact, a summary judgment order should not be granted. (Ill. Rev. Stat. 1969, ch. 110, par. 57(3).) It is our task, therefore, to determine whether a genuine issue of material fact existed as to Count II of the petition for attorneys' fees or as to Count II of the counter-claim for malpractice.
Count II of the Schroeders' counter-claim sets forth five different allegations of malpractice. We believe that the last four of these allegations are so clearly without legal or factual merit that they warrant no discussion. The first allegation concerns the failure of Wahler & Pecyna to properly raise on appeal the theory that the then-existing School Code eminent domain provisions authorized a taking of no greater estate than a fee simple determinable. It is alleged that the attorneys and clients had agreed that all possible issues would be raised on appeal, including specifically the school districts lack of authority to acquire an estate in fee simple absolute through eminent domain. It is further alleged that in failing to assert this theory the counter-defendants waived a meritorious defense contrary to the specific instructions of their clients.
 2 Appellants correctly cite the obligation of an attorney to follow the instructions of his client. Whenever an attorney disobeys the lawful instructions of his client he is liable for any loss which ensues from such act. (Fleener, v. Fleener (1970), 263 N.E.2d 879; Annot. (1928), 56 A.L.R. 962.) Damages will not be presumed, however, and the client *1013 bears the burden of proving that damages resulted. This burden involves the task of establishing that, but for the negligence complained of, the client would have been successful in the prosecution or defense of the action in question. (Oda v. Highway Insurance Co. (1963), 44 Ill. App.2d 235; Kimen v. Ettelson (1940), 303 Ill. App. 230; Annot., (1956), 45 A.L.R.2d 5, 21.) We therefore believe that unless counter-plaintiffs' theory that a school district can take no greater estate than a fee simple determinable finds some support in Illinois law, the court below was presented with no genuine issue of material fact, and summary judgment was appropriate.
 3, 4 The Schroeders place primary reliance on Kelly v. Bowman (E.D. Ill. 1952), 104 F. Supp. 973. Initially, we point out that the issue before that court differed from that presented in the case at bar. In Kelly, the court sought to determine what quantum of estate was taken by a school district in a 1906 condemnation suit, where the record did not reflect the precise quantum of estate claimed in 1906 by that school district. We must determine whether section 7-17 of the 1959 Illinois School Code grants the power to take a fee simple absolute interest if a school district so desires. In the course of the Kelly opinion, however, the 1905 School Code's eminent domain provision, which was substantively similar to section 7-17, was interpreted at page 974:
"Section 151 provides and limits the taking of lands for the purpose of a schoolhouse site. There is no intention expressed by the legislature in this Act for the school district to obtain a fee simple title. It is quite clear that the Legislature intended that the Trustees were to exercise their rights of eminent domain in obtaining the school site for school purposes only."
The doctrine of stare decisis does not require this court to accept that federal trial court's interpretation of an Illinois statute. (Ray Schools-Chicago-Inc. v. Cummins (1957), 12 Ill.2d 376.) Our decision should be guided by the statutory interpretations promulgated by the courts of Illinois.
In Miner v. Yantis (1951), 410 Ill. 401, our Supreme Court had occasion to interpret the eminent domain provision of the 1881 School Code, a section also similar in substance to section 7-17. As in Kelly v. Bowman, supra, the crucial issue was the nature of the interest taken by condemnation, where the record failed to reveal the intention of the condemning school district. The court's holding invoked two legal presumptions. First, in the absence of proof to the contrary, it was presumed that the condemning party intended to claim no greater estate than was absolutely necessary to accomplish its purposes. As a corollary, it was *1014 presumed that possession of the real estate was subservient to the rights of the owner of record title. The ultimate conclusion of the court was that, absent other evidence, it would presume that the school district had acquired no more than an easement, a possessory estate consistent with the rights of the holder of record title. This holding, however, in no way suggested that the school district would have been inhibited by the eminent domain statute from taking in fee simple absolute if it had so desired. Quite the contrary was expressed by the court at pages 404-405:
"Plaintiffs argue that the powers of school trustees are so limited that they do not have the power to acquire realty in fee simple absolute, except in two cases: (1) to take title in satisfaction of a judgment, and (2) to take title in settlement of debts; and insist that in only these two cases did the legislature give them the power to take title without limitation. They insist that in all other instances the trustees cannot take title to real estate in fee simple, but that they are strictly limited in all cases to such interest as is absolutely necessary for school purposes. With this contention we cannot agree. If this reasoning were followed, trustees of schools could never obtain anything but an easement upon land upon which it is desired to erect a schoolhouse. This is too narrow a construction of the statutory power of school trustees to `acquire real estate for school purposes.' We are of the opinion that trustees of schools may by proper grant, take title in fee simple absolute to real estate to be used for school purposes."
This statement, although it is dicta, is a clear indication of our Supreme Court's disposition against limiting the estate obtainable by a condemning school district.
In City of Waukegan v. Stanczak (1955), 6 Ill.2d 594, the Illinois Supreme Court was called upon to determine whether the eminent domain powers granted in the School Code authorized the taking of a fee simple absolute. Although the condemnation in that case was initiated by the school district, it was prosecuted by the city. Accordingly, the court examined the breadth of statutory power conferred by both the City Charter and the pertinent School Code eminent domain statute, (Ill. Rev. Stat. 1953, ch. 122, par. 32-30). The court held as follows at page 606:
"* * * [W]e hold that the grant of power here included the power to take a fee simple, and the award vesting fee simple title was not excessive in quantum of estate. [Cases cited.]"
Without entering into a lengthy dissection of the court's opinion, we feel that the frequent references to the eminent domain provision of *1015 the School Code and to Miner v. Yantis, supra, leave no doubt that the decision was, at least in part, based on the conclusion that section 32-30 of the School Code authorized the taking of an estate in fee simple absolute.
It is the Schroeders' contention that, despite these cases, the power granted by the statute at bar, section 7-17 of the 1959 School Code, has never been judicially construed. They assert that the argument they urged upon their attorneys was thus one of first impression of this state. We have already noted that the statutory provision interpreted in Miner v. Yantis, supra, resembled par. 7-17 in substance. A comparison with par. 32-30, interpreted in City of Waukegan v. Stanczak, supra, also reveals basic similarities. Nothing in these three statutes warrants a narrower interpretation of the grant of condemning power in section 7-17 than in the other School Code eminent domain provisions interpreted in Miner and City of Waukegan. We believe that the position of our Supreme Court is clear and that the Trustees of Schools were fully empowered by par. 7-17 to take a fee simple absolute estate in the Schroeders' property. For Wahler & Pecyna to have argued otherwise an appeal would have been a futile act and could not have altered the outcome of the litigation.
In Kimen v. Ettelson, supra, plaintiffs instituted a cause of action virtually identical in theory to the Schroeders'. We consider the disposition in that case instructive:
"The cases are rare, indeed, in which a pleader can assert with certainty what the decision of a court `might have been.' There are such cases, as, for instance, where an attorney fails to interpose the defense of the Statute of Limitations where the action has been barred thereby and similar cases. In this case the certainty appears to be that the court would not have adopted the argument if it had been presented. * * *
We are persuaded no skill or vigilance of a lawyer, however distinguished, could have procured a different decision in the Kimen case. The trial court correctly held the complaint did not state a cause of action, and the court did not err in striking the complaint and entering the order dismissing the suit."
 5 For the same reasons, we hold that the failure to pursue on appeal the legal argument urged by the Schroeders could not have supported an action for malpractice. No genuine issue of a material fact was raised as to the claim for malpractice, and the order granting counter-defendants' motion for summary judgment was correct.
With regard to Count II of the petition for attorneys' fees, the parties *1016 have stipulated to the existence of an employment relationship. The only disagreement is whether there existed a genuine issue of material fact as to the terms of the contract creating that relationship.
The order granting petitioners' motion for summary judgment awarded the sum of $47,038.63. Nowhere in that order is there reference to the basis for this particular figure. Nowhere in petitioners' motion for summary judgment is there reference to the source of the figure of $46,404.86, the claimed damages. We note, however, that in the amended petition there is cited a "written agreement and contract of hire," dated April 22, 1960, as the basis for petitioners' damages. That reference is to a letter from Wahler & Pecyna to the Schroeders, apparently confirming a previous conversation concerning attorneys' fees for the pending condemnation litigation. The letter provided as follows:
"Confirming our conversation of the past week, I wish to advise you that we agree to handle your condemnation suit on the basis of 22% of any recovery over and above $8,000.00 per acre plus costs. Costs in this matter would be appraisals fees, court costs, court reporters fees and so forth.
As I informed you we have filed a Traverse. In the event that the traverse is sustained, you will be charged on a per diem basis. If during the course of the proceedings, we deem it advisable to take an appeal from any adverse rulings of the Court, then such appeal will be handled on the basis of a per diem and costs basis."
Petitioners contend that this letter manifested the intent of both the attorneys and their clients and expressed within its four corners the contract for hire. The Schroeders, however, never signed, initiated or otherwise acknowleged this "contract." In fact, in their counter-affidavit they refute petitioners' contention and assert a number of other formulae for attorneys' fees which they contend formed the basis of the attorney-client relationship.
Exhibit # 1 attached to the Schroeders' counter-affidavit is another letter from Wahler & Pecyna, this one dated January 26, 1961. After again referring to earlier conversations, the attorneys outlined therein a new arrangement for attorneys' fees. The 22% contingency fee was reduced to 11% plus $5,000. The basis for appellate fees was changed from quantum meruit to a flat fee of $10,000 plus costs. In their counter-affidavit the Schroeders allege the existence of a further agreement between the parties which was not reflected in correspondence; that in the event the final condemnation award was not satisfactory to the Schroeders, the attorneys would be paid upon an hourly rate commensurate with the schedule of fees published by the Chicago Bar Association.
 6-8 While the matter is not free from doubt, it appears that the *1017 trial judge accepted the theory of the petitioners that the letter of April 22, 1960, expressed the mutual intention of the parties. The court apparently awarded damages based on the formula defined in that letter. Petitioners argue that summary judgment was therefore appropriate, because only a legal issue and no fact issues were before the trial court. In support, they cite the recognized Illinois rule that the interpretation, construction or legal effect of a contract is a matter to be determined by the court as a question of law. (12 I.L.P. Contracts, § 246.) Petitioners, however, have misinterpreted the precise issue raised by their motion for summary judgment and respondents' counter-affidavit. The question raised was whether the contract for hire was manifested in the first letter, in the second letter, in intervening discussions or in some combination of all these. As thus presented, the issue requires the application of legal principles which petitioners failed to cite. While the court determines the meaning of contractual terms, as a matter of law, it is the jury's province to determine what terms comprise the contract, and the intent of the parties in regard thereto. (Stone v. Appel (1883), 12 Ill. App. 582; Mosley v. Hundhausen (1918), 211 Ill. App. 627.) If the construction of an agreement is dependent not only upon the meaning of the words employed but also upon extrinsic facts and circumstances or upon the construction which the parties themselves have placed upon the contract, and the facts are controverted, the inference to be drawn is for the jury. (Chicago Daily News v. Kohler (1935), 360 Ill. 351; Bertlee Co. v. Illinois Publishing & Printing Co. (1943), 320 Ill. App. 490.) If a contract has to be made out partly by letters and partly by evidence of conversations concerning which there is not entire agreement as to what was said, or the circumstances under which the utterances were made, the question of whether there was a contract, as well as, if so, what it was, is a question of fact for a jury. Telluride Power Transmission Co. v. Crane Co. (1902), 103 Ill. App. 647.
 9 We hold that a genuine issue of material fact was presented by the counter-affidavit and exhibits of the Schroeders. It was error to grant the motion for summary judgment on Count II of the petition for attorneys' fees.
We affirm that part of the order of the trial court granting summary judgment as to Count II of the counter-claim for malpractice and reverse that part granting summary judgment as to Count II of the petition for attorneys' fees. This cause is therefore remanded for further proceedings not inconsistent with this opinion.
Affirmed in part and reversed and remanded in part.
LEIGHTON, P.J., and SCHWARTZ, J., concur.