2 Ill. App.3d 1035 (1971)
279 N.E.2d 66
BEN MATTION et al., Plaintiffs-Appellees,
v.
TRUSTEES OF SCHOOLS OF TOWNSHIP 41, Defendants-Appellants.
No. 54706.
Illinois Appellate Court  First District.
November 17, 1971.
*1036 Ancel, Stonesifer & Glink, of Chicago, for appellants.
Bernstein, Golan & Yalowitz and L. Louis Karton, of Chicago, for appellees.
Judgment reversed.
Mr. PRESIDING JUSTICE ADESKO delivered the opinion of the court:
This is an appeal by the defendants, Trustees of Schools of Township 41 North Range 12, a corporation, and Board of Education Community Consolidated School District No. 64, from the decree entered by the circuit court of Cook County quieting title to the 5 acre tract in question in the plaintiffs, Ben and Dina Mattion. On appeal the defendants contend:
"(1) That they acquired the unconditional warranty deed as part of negotiated agreement; and
(2) That they acquired a fee simple record title, not a conditional or determinable fee subject to defeasance, termination and reverter."
*1037 The facts are as follows:
On June 8, 1956, the plaintiffs purchased a twenty-acre tract, which included the 5 acres in question, from Morris and Lillian Kand for $205,000, or about $10,000 an acre. The subject property was vacant and the plaintiffs had spent $39,000 on improvements to said property.
On August 21, 1957, the defendant Board of Education adopted a resolution to acquire the subject 5 acre tract plus 3 additional acres for school site purposes. On August 23, 1957, the attorney for the Board sent the plaintiffs an offer of $52,000 for free and clear title to the 8 acre parcel. No reply to this offer was received and on September 13, 1957, the trustees of the school district filed a suit in condemnation. The plaintiffs filed an appearance in the condemnation suit and on March 24, 1958, filed a cross-petition seeking damages to the remainder of the plaintiffs' tract of land in the event that the condemnation proceeded against the subject property.
Subsequent to the above filings, several meetings were held between the parties and the defendants agreed to pay $10,000 per acre for 5 acres of the plaintiffs' land.
On October 15, 1958, plaintiffs sold approximately 10 acres of the twenty-acre tract to Norwood Land Company for approximately $15,000 per acre. The contract was entered into and consummated by the plaintiffs during the pendency of said condemnation suit and prior to the settlement thereof. On October 15, 1958, the Board of Education adopted a resolution whereby it accepted the above agreement to purchase the plaintiffs' land. On December 10, 1958, the plaintiffs executed and delivered to the defendants a warranty deed conveying the 5 acre parcel to the trustees of the School District for the use and benefit of the Board of Education. The plaintiffs received $50,000. The Norwood Land Company had offered to purchase the 5 acre parcel in question for approximately $15,000 per acre.
For a period of over 5 years after the purchase of the 5 acre parcel, the Board of Education continually considered said parcel as a school site, however, due to population trends and the construction of public and parochial schools within the district, the Board, on March 18, 1964, by resolution, declared that said 5 acre parcel is unnecessary for the uses of the school district and that the trustees are authorized and directed to sell said real estate.
The plaintiffs in their complaint allege that the defendants never used and never intended to use the 5 acre tract as a school site. The plaintiffs alleged that they offered the defendants $50,000 for the return of the said property since the defendants had acquired fee simple title to said property subject to the condition subsequent that said property would *1038 be used as a school site and upon abandonment of said property for such use, the real estate would revert to the plaintiffs. They allege that the defendants wrongfully used their power of eminent domain to coerce the plaintiffs to execute and deliver the warranty deed to the 5 acre tract. Finally, the plaintiffs allege that the deed did not contain the provisions relating to the condition subsequent to the reverter and therefore the deed should be reformed to include the true intention of the parties.
On April 3, 1964, plaintiffs commenced this action and on May 24, 1965, this case was referred to a Master in Chancery. The Master in Chancery found that the acquisition and subsequent intended disposition of said property by the trustees was according to the statutes of the State of Illinois and that the trustees are holders of a fee simple title to said property. The trial court sustained the exceptions to the Master's report and entered a decree in favor of the plaintiffs.
 1 The defendants' first contention on appeal is that they acquired the unconditional warranty deed as part of a negotiated agreement. Ordinarily the use or threatened use of civil proceedings to enforce a claim made in good faith does not constitute duress vitiating a contract made by the person sued or threatened. I.L.P. Contracts, sec. 127.
The cases cited by the plaintiff are not in point. In Slade v. Slade, 310 Ill. App. 77, the plaintiff was appealing from an order dismissing her complaint. The plaintiff in said case was seventy years old and at the mercy of the other stockholder in her late husband's corporation. In Stoltz v. Stoltz, 393 Ill. 433, the Illinois Supreme Court found that there was no evidence in the record to support his claim of duress.
The Master in Chancery heard the testimony of the witnesses and observed their demeanor on the stand and therefore was in the best position to determine the credibility of each witness and the weight to be given to his testimony. The Master recommended that a decree in favor of the defendants be entered in accordance with the findings of facts and conclusions of law.
The plaintiffs had engaged in the business of building and sub-dividing for over thirty years. Attorneys represented the plaintiffs in their dealings with the defendants. The plaintiffs had the right to go to court and challenge the condemnation proceeding.
 2 The agreement was reached as a result of bargaining. The defendants increased their original offer from $6,500 to $10,000 per acre and reduced the number of acres to be taken from 8 to 5 acres. The land was appraised at $7,000 an acre. The use of the 5 acres as a school site would increase the value of the residences which plaintiffs' had planned to build on their remaining acreage. The 5 acre tract was *1039 acquired at a fair price. The land in question was not acquired through condemnation proceedings. The plaintiffs were not coerced into selling the 5 acre tract.
 3 The second and final contention of the defendants was that they acquired a fee simple title to the 5 acre tract. The plaintiffs contend that the title acquired by the defendants was a conditional or determinable fee subject to defeasance, termination and reverter upon abandonment by the defendants. The Illinois Statute governs the question whether the defendants received fee simple title to the 5 acre tract:
"The trustees of schools may receive any gift, grant, donation or devise made for the use of any school or library or for any other school purpose within their jurisdiction. They are invested in their corporate capacity with the title of all school buildings and school sites." (Ill. Rev. Stat. 1957, ch. 122, par. 4-21.)
"When in the opinion of the school board, a school site, building or site with building thereon, or any other real estate of the district, has become unnecessary or unsuitable or inconvenient for a school, or unnecessary for the uses of this district, * * * real estate of the district not acquired by referendum and not having a school building thereon, * * * may be sold by the school board without a referendum approving such sale. * * * [T]he school board shall forthwith notify the trustees of schools or other school officials having legal title to such land of the terms upon which they desire the property to be sold.
* * *
The deed of conveyance shall be executed by the president and clerk or secretary, and the proceeds paid to the school treasurer for the benefit of the district * * *." (Ill. Rev. Stat. 1957, ch. 122, par. 4-22.)
The defendants have substantial discretion to take land sufficient not only for present needs but for further requirements which they can and should anticipate. The school district was anticipating population increases when it purchased the school site and periodically considered the need for a school on the site. Finally it decided the school site was not needed because of the increase of neighboring schools.
The defendants did not acquire the 5 acre tract through eminent domain. Many cases cited by the plaintiffs dealt with school sites which were obtained by condemnation. (Miller v. Com. of Lincoln Park, 278 Ill. 400; Kelly, et al. v. Bowman, et al., 104 F. Supp. 973.) Other cases cited by the plaintiffs involved situations where the original owner retained record title to the school site and continued paying taxes on *1040 the property. Miner v. Yantis, 410 Ill. 401; Superior Oil Co. v. Harsh, 39 F. Supp. 467.
In Kendrick v. City of St. Paul, et al., 213 Minn. 283, the defendant city did not claim to have received more than an easement by the condemnation proceedings, but claimed a fee simple title under the warranty deed it received. In the above case the court held that the conveyance was in the form of a warranty deed without limitation or condition; and, in the absence of any language indicating that the conveyance of an easement only was intended, we cannot so construe the deed.
 4 The plaintiffs could have bargained for a reverter clause in the deed. The Illinois statutes give the school boards authority to obtain fee simple title to school sites and to later sell the sites when they are no longer necessary. The proceeds of the sale go to the school treasurer for the benefit of the school district.
For the above reasons, the judgment of the circuit court of Cook County is reversed.
Judgment reversed.
BURMAN, and DIERINGER, JJ., concur.