(No. 11185.—Decree affirmed.)

JOHN MILLER, Appellant, *vs.* THE COMMISSIONERS OF LINCOLN PARK, Appellee.

*Opinion filed April 19, 1917—Rehearing denied June 7, 1917.*

1. WATERS—*riparian rights of owner of land on shore of Lake Michigan.* The riparian rights of an owner of land adjoining the waters of Lake Michigan are the right of accretion and the right of access to the water from his land, as the State holds the title to the bed of the lake.

2. EMINENT DOMAIN—*extent of estate taken by right of eminent domain is no greater than is necessary for the public purpose.* The grant of power to take the land of an individual by the exercise of the right of eminent domain is strictly construed, and where the estate to be taken is not expressly defined, only such an estate will vest as is necessary to accomplish the purpose in view, even though it be only an easement.

3. PARKS—*act of 1871 does not give park commissioners the fee of land condemned for driveway.* The act of 1871, under which

the land needed for the construction of Sheridan drive by the commissioners of Lincoln Park was condemned, does not provide that the commissioners shall acquire the fee to the land, and as an easement was all that was necessary for the public purpose for which the land was taken, the commissioners acquired an easement, only, and not the fee.

4. LACHES—*when a land owner is guilty of laches in asserting his riparian rights.* Where a portion of a lot lying next to the shore of Lake Michigan is condemned by park commissioners for a driveway, and the driveway is constructed not only over the portion of the lot condemned but also, in part, over the submerged land in the lake, the riparian rights of the lot owner with respect to accretions and access to the lake are at once destroyed and he has an immediate right of action for compensation, but if he acquiesces in such condition for more than twenty years he is barred by *laches* from maintaining a bill to enjoin the further filling in of the submerged land for park purposes.

DUNCAN, J., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

BUTZ, VONAMMON & JOHNSTON, (OTTO C. BUTZ, and NATHAN S. BLUMBERG, of counsel,) for appellant.

FRANCIS O'SHAUGHNESSY, (LAWRENCE HARMON, of counsel,) for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The circuit court of Cook county sustained a demurrer to the amended bill of John Miller, filed against the commissioners of Lincoln Park, and dismissed the bill for want of equity, and the complainant appealed.

The purpose of the bill was to enjoin the commissioners from the extension of Lincoln Park eastward from Sheridan drive by the reclamation of land submerged by the waters of Lake Michigan opposite land owned by the complainant until they have acquired the riparian rights claimed by the complainant. The complainant's claim for relief was based upon the following facts stated in his bill: On May 9, 1890, the complainant and others, whose title the com-

plainant has since acquired, were the owners of four lots in the town of Lake View, together with a strip of land adjoining those lots on the east and lying between them and Lake Michigan, which was its eastern boundary. On that day the town of Lake View filed a petition for ascertaining the damages for opening Sheridan drive and for the condemnation of all that portion of the land, whether submerged or above the waters of Lake Michigan, lying between the lines of the drive, which was 125 feet wide. The drive extends from a point southeast to a point northwest of the complainant's premises, and the premises described in the petition for condemnation included a part of the strip of land above mentioned lying between Lake Michigan and the complainant's four lots, the roadway being built for the whole of the distance over said strip of land, except that the east part of the roadway was built over submerged lands. The condemnation proceedings were brought by the town of Lake View for the benefit of the commissioners of Lincoln Park pursuant to the statute, and a judgment was rendered awarding $6278.50 compensation to the complainant and his co-tenants, who appealed to the Supreme Court. During the pendency of the appeal a written contract was entered into between the complainant and his co-tenants and the commissioners of Lincoln Park, whereby it was agreed that the appeal in the Supreme Court should be dismissed, the judgment appealed from vacated and a new judgment entered in the county court for $9000 as an award of compensation for the property in question taken or damaged by the establishment and construction of the driveway, and the commissioners agreed that they would never claim to have acquired by the condemnation proceedings any right, title or interest in any property on or opposite the four lots above mentioned lying outside of the lines of the driveway; that they would not destroy the pier jutting into Lake Michigan opposite the premises except so much as lay within the lines of the said driveway or as might be necessary for the

proper construction and maintenance of the driveway, and that they would never claim to have acquired by such proceedings any right, title or interest in any lands or accretions which might form either east or west of the driveway, and would not claim to have acquired any right to interfere with any right of the complainant or his co-tenants, or persons claiming under them, to construct or repair piers or other structures on any land belonging to them, either east or west of the land taken for such driveway, or to claim accretions in any way made or formed against the land taken for such driveway, except so far as might be necessary for the proper construction and maintenance of the driveway. In pursuance of the agreement the appeal was dismissed and a judgment for $9000 was entered on August 14, 1891. The commissioners of Lincoln Park have adopted a general plan for the extension of the park, which contemplates the reclamation of land now submerged under the waters of Lake Michigan opposite the premises of the complainant to the distance of 1200 feet, and are about to begin filling in the submerged land by pumping sand and depositing debris and earth thereon. They have already built a pier running parallel to Sheridan drive at a distance of about 1200 feet east of the east line of the drive to a point north of the south line of the complainant's premises, and, by reason of the erection of such pier, accretions are forming along the east line of Sheridan drive in front of the complainant's premises, and if such pier be extended still further north, as the commissioners propose to do, the waters of Lake Michigan in front of the complainant's property will disappear and be replaced by land formed by the washing in of the sands of Lake Michigan into the pocket bounded on the east by the pier, on the west by the driveway and on the south by the present limits of Lincoln Park. The taking of the land in front of the complainant's premises deprives him of immediate access to the waters of Lake Michigan and removes the shore of Lake Michigan for a

distance of 1200 feet east of the present shore line. The bill alleges that the riparian rights attached and appertaining to the four lots and the strip of land between those lots and Lake Michigan above described were not condemned or taken by virtue of the condemnation proceeding and that the complainant is the owner of the riparian rights attached to those premises, and by virtue of such rights is entitled to free egress and ingress over and across the premises and Sheridan drive to Lake Michigan, and to any gradual accretion of land that may attach itself to the premises or to the east line of Sheridan drive; that the commissioners of Lincoln Park are entitled only to an easement in the land condemned for the purpose of a public road attached to and forming a part of Lincoln Park, and that the commissioners are estopped from claiming any right to any of the accretions that may form east of the driveway; that the commissioners of Lincoln Park have not acquired the riparian rights of the complainant by condemnation or otherwise, and have not made any effort to acquire said rights by amicable agreement, but threaten to extend the park by filling in the submerged lands and thereby destroy the value of the complainant's riparian rights without making just compensation therefor, and change his property from land having a lake front to property facing a public park, taking away the advantage of privacy and causing irreparable injury.

The riparian rights which the appellant and his co-tenants had by reason of their ownership of land on the lake shore adjoining the water were the right of accretion and the right of access to the water from their land. (*Revell* v. *People,* 177 Ill. 468; *Commissioners of Lincoln Park* v. *Fahrney,* 250 id. 256.) The State holds the title to the bed of Lake Michigan. *People* v. *Kirk,* 162 Ill. 138; *Revell* v. *People, supra.*

The act incorporating the commissioners of Lincoln Park was passed on February 8, 1869. (Private Laws of

1869, p. 368.)   It authorized the construction of a drive
200 feet wide, so that the east line should be the waters of
Lake Michigan, from Pine street to the south line of the
park.   This act provided for the payment for lands for the
purpose of the park out of bonds, but there was no valid
provision of law for the issue of such bonds, and therefore,
on June 16, 1871, an act was passed "in regard to the com-
pletion of public parks, and the management thereof."
(Hurd's Stat. 1916, p. 1839.)   On February 18, 1874, sec-
tion 20 was added to this act, which authorized the com-
missioners to establish and construct any driveway from the
park and to commence and prosecute proceedings for that
purpose in accordance with the provisions of article 9 of
the Cities and Villages act.   This section was subsequently
amended, the last amendment being made on June 4, 1889.
(Hurd's Stat. 1916, p. 1842.)   On this same date two other
acts were passed by the legislature, one of which gave to
park commissioners having control over any boulevard or
driveway connecting with any public park under their con-
trol and bordering upon any public waters in the State,
power to extend such boulevard or driveway, of the width
of not more than 200 feet, over and upon the bed of such
public waters, and authorized proceedings to condemn the
riparian or other rights of the owners of lands on the shore
adjoining the waters, according to the provisions of article
9 of the Cities and Villages act.   (Hurd's Stat. 1916, p.
1857.)   The other act granted to the commissioners of Lin-
coln Park all the right, title and interest of the State in and
to the bed of Lake Michigan on which the driveway con-
nected with the park was then constructed or on which any
extension thereof might afterward be constructed, and a
strip of such submerged land 50 feet wide east of the drive-
way.   (Hurd's Stat. 1916, p. 1856.)   By virtue of these
acts the proceedings mentioned in the bill were prosecuted
for the condemnation of the appellant's land on the shore
adjoining the water.

It is insisted by the appellee that it acquired by these proceedings the fee simple to the land within the limits of the drive and that the appellant's riparian rights were therefore totally destroyed, while the appellant insists that only an easement was acquired. The acts of 1869 and 1871 provided that in cases of condemnation of land for the use of the park, upon payment of the compensation awarded being made the title to the land should vest forever for the uses and purposes mentioned in those acts. It is argued on behalf of the appellee that these acts clearly express the legislative intent that an estate greater than an easement was to be taken and that an easement would not give a title commensurate with the requirements of the act of 1871, and that therefore the fee would be acquired by such condemnation. The acts declare that the driveways authorized, when established, shall form a part of the park and be managed and governed as a part thereof, and it is argued that therefore the driveways must be held by the same title as the rest of the park, and that the title acquired by condemnation for the purpose of the drives is also a fee.

Without discussing the question of the title acquired by condemnation for general park purposes, we do not agree with the contention that the condemnation of lands for the purpose of driveways vests the fee of such lands in the commissioners. The grant of power to take the land of an individual by the exercise of the right of eminent domain is strictly construed, and the extent of the estate which may be taken is no greater than is necessary for the public purpose to be served. Where the estate to be taken is not expressly defined, only such an estate will vest as is necessary to accomplish the purpose in view, and where an easement is sufficient for that purpose no greater estate can be taken. (*Tacoma Safety Deposit Co.* v. *City of Chicago,* 247 Ill. 192.) In this case it was held that a city, by condemnation for the purpose of a street, did not acquire the fee but an easement, only. Section 20 of the act of 1871

authorizes the commissioners to use any public street or road for its driveway, or part thereof, in their discretion, upon certain conditions, and when they have determined to use such street or road the section provides the street or road or part so taken shall form a part of the park and may be improved, managed and governed as a part thereof. In such a case the commissioners have no greater title than the city from which the street is taken, and if the land for the street was acquired by condemnation or by common law dedication the title acquired was no more than an easement, yet the street so taken is declared to form a part of the park, subject to be improved, managed and governed as a part thereof, in the same language as a driveway acquired by condemnation is declared to be a part of the park and subject to be improved, managed and governed as a part thereof. The language of the statute does not declare that the title acquired shall be a fee. It is not necessary for the purposes for which the land is taken that the commissioners should acquire a fee, and it must be held that they did not acquire a fee but merely an easement.

The appellant insists that the condemnation judgment did not destroy his riparian rights but that he was still the owner of the fee subject to the easement for the driveway and that he was entitled to access across the driveway from his land to the water and to the accretions which might be formed beyond the driveway, while the appellee contends that these rights were destroyed by the condemnation judgment and the consequent separation of the appellant's land from the water. A further contention of the appellant is that by the contract not to claim to have acquired any right, title or interest in any lands or accretions which may form east or west of the driveway the appellee is now barred from claiming that the appellant's riparian rights have been destroyed or claiming the right to fill in the bed of the lake beyond the driveway. It is not material which of these contentions is right. Whether the appellant's riparian rights

were lost by reason of the condemnation, or whether they continued subject to the easement condemned, or whether the appellee is bound by the contract, in either case the appellant's remedy has been lost by his failure to pursue it promptly. Immediately following the condemnation the commissioners constructed the drive, in part, upon the land of the appellant and his co-tenants which was condemned, but the east part of the drive was beyond that line and in the lake on the submerged lands, the fee of which belonged to the appellee by reason of the grant from the State by the act of June 4, 1889. The width of this east part of the drive which was constructed upon submerged lands does not appear, but it is immaterial. When the driveway was constructed it separated the land of the appellant from the water and made any accretions to the appellant's land, as well as any access from his land to the water, impossible. The commissioners had no right to fill in the submerged land constituting the east part of the road without compensating the appellant for his riparian rights which were thus destroyed. The appellant had not consented to their doing so, but their action was apparently based upon the right acquired by virtue of the condemnation proceedings. The appellant had just as good a cause of action when this was done, in 1891, as when his bill was filed, in April, 1916. For twenty-five years,—a period beyond the longest statute of limitations,—he failed to assert his rights. His bill presents no excuse for the *laches.* By analogy to the statute of limitations, which would bar any action at law he might bring to enforce the rights which he now claims, he must be regarded by this neglect for so long a time as also barred from maintaining a bill in equity for the same purpose.

The demurrer to the amended bill was properly sustained, and the decree is affirmed.     *Decree affirmed.*

Mr. JUSTICE DUNCAN, dissenting.