ARTHUR M. SCHELLER, JR., Plaintiff-Appellant, *v.* TRUSTEES OF SCHOOLS OF TOWNSHIP 41 NORTH, RANGE 12, EAST OF THE THIRD PRINCIPAL MERIDIAN *et al.*, Defendants-Appellees.

First District (5th Division)   No. 77-580

Opinion filed December 22, 1978.

Michael Schiessle and Arthur M. Scheller, Jr., both of Park Ridge, for appellant.

Foran, Wiss and Schultz, of Chicago (Robert E. Wiss and Ian H. Levin, of counsel), for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

Plaintiff, as the successor in interest to the original fee simple owners and the beneficiary of a trust, filed a two-count complaint in ejectment and declaratory judgment, respectively, seeking to recover seven parcels of property within a five-acre school site which defendants were abandoning for public school use. The trial court granted summary judgment in favor of defendants on both counts. On appeal, plaintiff contends that the trial court erred because (1) the property in issue should revert to him since defendants acquired, pursuant to the 1952 condemnation proceeding, only an easement or fee simple determinable title for school purposes and (2) the 1952 judgment order was void for want of jurisdiction over the original owners and trustee in the eminent domain proceeding. (Ill. Rev. Stat. 1951, ch. 110, par. 138.) We affirm. The necessary facts are contained within our discussion of plaintiff's individual contentions on appeal.

## I

We first address plaintiff's contention with respect to the quantum of estate acquired by defendants in the 1952 condemnation proceeding. Plaintiff's argument is twofold: (1) At the time of the condemnation proceeding, the applicable case law and relevant statute did not even allow school trustees to acquire fee simple title in an eminent domain proceeding; and (a) although a relatively recent case would allow trustees to take fee simple title if they so desire, the trustees in the instant case never manifested a desire to do so. Defendants argue that the law as it existed in 1952 did bequeath the power upon school trustees to acquire fee simple title and that defendants here manifested the requisite intention and acquired a fee simple, as evidenced by the language in the petition to condemn and the resulting jury verdict and judgment order.

The threshold question before us is whether school trustees were empowered in 1952 to take property for school purposes in fee simple absolute in an eminent domain proceeding. Correct disposition of this question requires our review of the applicable case law, which we will discuss in chronological order.

In *Superior Oil Co. v. Harsh* (N.D.Ill. 1941), 39 F. Supp. 467, *affirmed* (7th Cir. 1942), 126 F.2d 572, plaintiff, the lessor of the record title holder, sued to enjoin defendants, school trustees and four persons interested in an oil and gas lease executed by the trustees, from operating an oil well upon a schoolhouse site. The owners of the record title paid all taxes, and there was no evidence of a deed passing from them to the trustees. The issue in the case was whether the trustees were vested with a fee simple title such that they would have title to the oil and gas, or whether they acquired an easement or fee simple determinable which would have limited their use of the property to school purposes only.

The court first sought to determine the authority defendants derived from the controlling 1881 statute. The statute provided that school trustees could acquire real estate for the use of the township for school purposes. It further provided that they could acquire property for the purpose of a schoolhouse site either with or without the owner's consent.

Although no formal condemnation proceedings had been instituted, the court found that the school authorities had acted informally pursuant to their powers under the statute and further that defendants had not proven that title was acquired by adverse possession.

The court held:

> "The title of the school trustees was the statutory title granted by the legislature, title by acts of eminent domain, a taking with consent of the owners for the use of the inhabitants of the township for school purposes. It would not alter the legal situation if the taking was without Fitzgerald's consent. The statute gave the

trustees the right to take with or without his consent. There is no evidence that the school trustees procured any other kind of title or that they ever made any claim to any other kind of title and, under the statute, they could by their acts obtain only such title as was necessary for the statutory purposes, that is, conduct of the school. They derive all authority from the statute and can exercise no power not expressed thereby. Stevenson v. School Directors, 87 Ill. 255, 257; Clark et al. v. School Directors, 78 Ill. 474, 476; School Directors, etc. v. Fogleman, 76 Ill. 189, 191; Potter v. Board of School Trustees, 10 Ill. App. 343, 345. Their title was merely the right to use the property for school purposes; there is no justification for its extension by implication. In Miller v. Commissioners, 278 Ill. 400, at 406, 116 N.E. 178, 181, it is said: 'The grant of power to take the land of an individual by the exercise of the right of eminent domain is strictly construed, and the extent of the estate which may be taken is no greater than is necessary for the public purpose to be served. Where the estate to be taken is not expressly defined, only such an estate will vest as is necessary to accomplish the purpose in view, and where an easement is sufficient for that purpose no greater estate can be taken.'

\* \* \*

It follows that the title acquired by the trustees at the inception, being one acquired by eminent domain, a taking with the owner's consent, under a statute giving the right to use the property for school purposes, no title to anything other than that necessary to enjoyment of what was contemplated by the statute, namely, use for school purposes, was included, and that the trustees were without the right to lease the school site for oil and gas purposes." 39 F. Supp. 467, 470-71.

However, in *Miner v. Yantis* (1951), 410 Ill. 401, 405, 102 N.E.2d 524, 526, the court stated that trustees "may, by proper grant, take title in fee simple absolute to real estate to be used for school purposes." In *Miner*, plaintiffs sought to set aside a deed to a school site granted to defendant on the grounds that they still held title to the land in question. Defendants maintained that the school trustees had taken title in fee simple by adverse possession. The court held that the elements of adverse possession had not been met although it would have been possible for school trustees to have acquired a fee by that method.

The court discussed the holding of the earlier case of *Superior Oil Co. v. Harsh* (E.D.Ill. 1941), 39 F. Supp. 467, *affirmed* (7th Cir. 1942), 126 F.2d 572 (discussed *supra*):

"The court held that, inasmuch as the land was taken by the exercise of the right of eminent domain, only such an estate vested as was necessary to accomplish the purpose in view, and since

an easement was sufficient to accomplish this purpose no greater estate vested, and the trustees were without the right to lease the school site for oil-and-gas purposes. This holding is in accord with the general rule of law recognized in Illinois that the grant of power to take the land of an individual by eminent domain is strictly limited to the taking of such an estate as may be specifically authorized by the statute itself, or if the estate is not specifically defined by the statute, then the limitation is to such an estate as is absolutely necessary to the purpose in view. (*Miller v. Comrs. of Lincoln Park*, 278 Ill. 400; *Tacoma Safety Deposit Co. v. City of Chicago*, 247 Ill. 192.) The holding in the *Superior Oil Co. case*, therefore, is limited to cases where the trustees enter upon land with permission of the owner or acquire title by eminent domain." 410 Ill. 401, 406, 102 N.E.2d 524, 526-27.

Furthermore, in *Miner*, as in *Superior Oil Co.*, there was no showing in the record that formal condemnation proceedings had been instituted. However, it was presumed that defendants acted informally pursuant to their authority under the eminent domain statute in force and therefore their rights were subservient to that of the record owner.

In the year following the *Miner* decision, the Federal District Court for the Eastern District of Illinois decided *Kelly v. Bowman* (E.D. Ill. 1952), 104 F. Supp. 973, *affirmed* (7th Cir. 1953), 202 F.2d 275. In *Kelly*, the school trustees had filed a condemnation action in 1906 to take certain lands for a school site. In 1952, the school trustees abandoned the use of the site for school purposes and sold their interest to one of the defendants.

The controlling statute which was similar in substance to the ones in *Superior Oil Co.* and *Miner* provided *inter alia*:

" 'The site * * * shall be the school house site for such district; and said district shall have the right to take the same for the purpose of a school house site either with or without the owner's consent by condemnation or otherwise.' " 104 F. Supp. 973, 974.

The court held:

"There is no intention expressed by the legislature in this Act for the school district to obtain a fee simple title. It is quite clear that the Legislature intended that the Trustees were to exercise their rights of eminent domain in obtaining the school site for school purposes only." 104 F. Supp. 973, 974.

The court felt compelled to hold as it did by virtue of the earlier decisions in *Superior Oil Co.* and *Miner*. The reasoning of those two cases dictated the finding that the trustees held only an easement and when they abandoned the use of the property as a school site, the property reverted to plaintiffs, holders of the record title.

In 1955, our supreme court decided *City of Waukegan v. Stanczak*

(1955), 6 Ill. 2d 594, 129 N.E.2d 751. There the city of Waukegan had formally condemned certain lands for a school building pursuant to the power granted them by a special city charter. The judgment order specifically vested a fee simple title in the city. The original owner contended on appeal that the property taken was excessive in estate and that the city should have only been granted a determinable fee.

The court stated:

"As to the estate taken, the State or its municipal delegatee, may take any property, if for a public purpose, so long as it provides just compensation. Subject to these constitutional requirements, the estate or quantum of interest taken may be the maximum interest in property, the fee simple absolute, if the legislature so determines. (*Sanitary District v. Manasse*, 380 Ill. 27.) In a given case, the grant of condemnation power in the statute, or, lacking an express definition of the interest to be taken, the absolute needs of the public purpose, may control the quantum to be taken, (*Miner v. Yantis*, 410 Ill. 401,) and where a condemnation statute does not expressly grant power to take a fee simple absolute, then a determinable fee, easement, or lesser interest may be all that may be taken. *Superior Oil Co. v. Harsh, D.C.* 39 F. Supp. 467; *Miller v. Commissioners of Lincoln Park*, 278 Ill. 400." 6 Ill. 2d 594, 604-05, 129 N.E.2d 751, 757.

The court then looked to the provisions of the city charter and said:

"With the interest contemplated by the charter, including 'buildings * * * sites * * * grounds * * * lands * * * property, * * * real estate' and with the functions authorized, including power to 'purchase * * * buy * * * lease * * * manage(ment) * * * sell * * * dispose * * * take * * * hold * * * convey * * * and * * * do all other acts which natural persons can do,' it is difficult to see how less than a full quantum was intended, including fee simple absolute. A contention that power to acquire 'real estate' for school purposes was limited to an easement or determinable fee was expressly refuted in the *Miner case.*

Accordingly, we hold that the grant of power here included the power to take a fee simple, and the award vesting fee simple title was not excessive in quantum of estate. *Sanitary District v. Manasee, [sic]* 380 Ill. 27; *Miner v. Yantis,* 410 Ill. 401." 6 Ill. 2d 594, 605-06, 129 N.E.2d 751, 757.

Finally, in *Trustees of Schools v. Schroeder* (1971), 2 Ill. App. 3d 1009, 278 N.E.2d 431, the appellate court was presented with the issue of whether the 1959 School Code granted the power to take a fee simple if a school district so desires. The issue arose under a malpractice setting

where plaintiffs alleged that their attorneys were negligent in failing to raise this issue in a former appeal. In considering plaintiffs' malpractice claim, the court examined the merits of plaintiffs' contention that trustees were not empowered to take a fee simple by virtue of the federal court's decision in *Kelly v. Bowman* (E. D. Ill. 1952), 104 F. Supp. 973 (discussed *supra*). The court expressly declined to follow *Kelly* and instead chose to be guided by the holding in *City of Waukegan* and the dicta in *Miner* that school trustees may take title in fee simple absolute to real estate to be used for school purposes. The court thus held that it would have been futile for plaintiffs' attorney to have argued otherwise in the former appeal.

■■ The following principles may be gleaned from the foregoing cases: When the elements of adverse possession are not satisfied and when no formal condemnation proceeding has been instituted, it is presumed that school trustees are acting under the authority given them by the relevant eminent domain statute in force. (*Miner v. Yantis* (1951), 410 Ill. 401, 102 N.E.2d 524; *Superior Oil Co. v. Harsh* (E.D. Ill. 1941), 39 F. Supp. 467, *affirmed* (7th Cir. 1942), 126 F.2d 572.) In the absence of evidence to the contrary, it is presumed that trustees take only that quantum of estate necessary to accomplish their purpose, that is, an easement or fee simple determinable which reverts back to the original owner or his successor upon cessation of use for school purposes. (*Kelly v. Bowman* (E.D. Ill. 1952), 104 F. Supp. 973, *affirmed* (7th Cir. 1953), 202 F.2d 275 (formal condemnation proceeding); *Miner v. Yantis* (1951), 410 Ill. 401, 102 N.E.2d 524; *Superior Oil Co. v. Harsh* (E.D. Ill. 1941), 39 F. Supp. 467, *affirmed* (7th Cir. 1942), 126 F.2d 572.) However, when an express grant of authority has been given, such as a special charter or where the judgment order explicitly vests a fee simple title, trustees are empowered to take real estate in fee simple absolute to be used for school purposes. (*City of Waukegan v. Stanczak* (1955), 6 Ill. 2d 594, 129 N.E.2d 751; *Miner v. Yantis* (1951), 410 Ill. 401, 102 N.E.2d 524 (*dicta*).) Finally, trustees are authorized under the School Code to take a fee simple absolute if they so desire. (*Trustees of Schools v. Schroeder* (1971), 2 Ill. App. 3d 1009, 278 N.E.2d 431.) However, the precise question with which we are presented in the case at bar still remains unanswered: What quantum of estate do school trustees acquire pursuant to their statutory authority in a formal condemnation proceeding when neither the petition to condemn nor the jury verdict and judgment order explicitly states that they desire or have been granted a fee simple absolute?

In order to resolve this question, we must first look to the statute in effect at the time of the 1952 condemnation proceeding. Section 7—17 of the School Code (Ill. Rev. Stat. 1951, ch. 122, par. 7—17) provided in relevant part:

"The board may take and purchase the site for a schoolhouse, either with or without the owner's consent, by condemnation or otherwise."

As this statute was identical in relevant part to the one in force in *Schroeder,* we hold that it empowered defendants to take a fee simple absolute if they so desired. Furthermore as held in *City of Waukegan* and as reasoned in *Miner,* fee simple is not an excessive quantum of estate if the judgment order so provides.

In order to discern the intention of defendants, it is necessary to examine the language used in the petition to condemn. Concomitantly, we will scrutinize the jury verdict and judgment order in order to determine whether a fee simple was granted to the trustees.

The petition to condemn provided *inter alia*:

"That the Trustees of Schools of Township 41 North, Range 12 East of the Third Principal Meridian, Cook County, Illinois, are, by the 'School Code' of the State of Illinois, effective May 1, 1945, and as subsequently amended, authorized and empowered to acquire by eminent domain proceedings, or otherwise, and to hold for the benefit of the School Districts of said Township, lands necessary for school purposes.

* * *

That in accordance with the provisions of the School Code of the State of Illinois, the Board of Education of Community Consolidated School District Number 64 Cook County, Illinois, adopted a resolution finding and determining that the school site commonly known as the OAKTON SCHOOLHOUSE SITE was inadequate and insufficient for uses as a schoolhouse site and that it was necessary to acquire additional property as a schoolhouse site * * *.

* * *

[legal description of property]

* * * and that it was necessary that the said lots be acquired for school purposes.

* * *

and that just compensation, as provided by the statute in such case made and provided, may be ascertained and made to the owner or owners or parties interested in the said property to be taken for School purposes, and that such proceedings may be had or taken in the premises as are by the statute in such case made and provided, and that the Registrar of Titles of Cook County, Illinois, be ordered by this court to issue to petitioners a Certificate of Title for school purposes * * *."

The jury verdict provided in pertinent part:

"We, the Jury, * * * DO FIND AND REPORT that we have ascertained and determined the just compensation to be paid by the Petitioners to the owner or owners or parties interested in the property hereinafter described as full compensation for the taking thereof for the uses and purposes set out in the petition in this case * * *."

In addition to incorporating the jury verdict, the judgment order provided *inter alia*:

"* * * for the taking and damaging of said real property and judgment is hereby entered.

* * *

Petitioner herein Trustees of Schools of Township 41 North, Range 12 East of the Third Principal Meridian, Cook County, Illinois, be and they are hereby authorized and empowered to enter and take possession of and use in their own name and for the use and benefit of Community Consolidated School District Number 64, Cook County, Illinois, for all purposes incident to the use for which the property is herein condemned the tracts and parcels of land above-described, for which payment has been made as herein provided."

Plaintiff and defendants have emphasized different language to support their respective contentions that the trustees took a fee simple determinable or a fee simple absolute in 1952. Specifically, defendants have pointed to the use of the words "acquire, property, lots, pieces or parcels of property, of real estate, taking," as indicating a fee simple. Plaintiff has argued that the repeated use of the phrase "for school purposes" in describing the property and title taken illustrates that the trustees intended to acquire only a fee simple determinable or easement. Plaintiff also urges that the employment of the term "damaging" in the judgment order indicates a fee simple determinable, for there can only be a damaging if, after the taking for school use, there is something left. We are not persuaded by either plaintiff's or defendants' arguments for two reasons. First, we presume that the petition, jury verdict and judgment orders were the then standard form orders. Further, we find that the use of the phrase "for school purposes" merely describes the public use justifying the trustees' exercise of their power of eminent domain. *Valentine v. Lamont* (1953), 25 N.J. Super. 342, 96 A.2d 417.

Defendants raise two additional arguments which we also find to be without merit. They argue that the fact that plaintiff or his predecessors did not pay any taxes on the property after 1952 indicates that a fee was taken. As plaintiff points out, the statutes in force at the time exempted property from taxation if it was being used for school purposes regardless

of whether or not it was a fee. (Ill. Rev. Stat. 1951, ch. 122, par. 14—11; Ill. Rev. Stat. 1951, ch. 120, par. 500.) Secondly, defendants contend that since there is no evidence that the trustees paid less than full value for the property, they intended to take a fee simple absolute. We are not convinced by this reasoning, since it is extremely difficult to calculate the compensation to be paid for a fee simple determinable since it can often last forever, and therefore is as valuable as a fee. See Hill, *The Value of Possibilities of Reverter and Powers of Termination in Eminent Domain*, 1963 U. Ill. L. F. 693.

■■ We base our holding that defendants acquired a fee simple absolute on the fact that the 1951 School Code empowered them to do so, and they were explicitly acting pursuant to that authority. We are guided by the holding of *Trustees of Schools v. Schroeder* (1971), 2 Ill. App. 3d 1009, 278 N.E.2d 431, which involved a statute identically worded in relevant part to the one in the case at bar. We also believe that this holding is the logical extension of the reasoning of the earlier cases that trustees may acquire the largest quantum of estate that the statute in effect at the time allows them to take.

## II

Plaintiff has raised a second separate theory as a basis for awarding the property to him in fee simple. In count II of his amended complaint, plaintiff sought a declaration that the judgment order in the original condemnation proceeding was void for want of jurisdiction over Chicago Trust Company, a necessary party. He also alleged that the affidavit for publication as to the remaining parties was so defective as to render it void on its face, thereby nullifying the resulting judgment order.

■■ Plaintiff's attempts to impeach this 26-year-old judgment constitute a collateral attack. (Ill. Rev. Stat. 1975, ch. 110, par. 72; *Large v. Lyons* (1975), 31 Ill. App. 3d 1076, 335 N.E.2d 524.) It is well established that a judgment order entered by a court which lacked jurisdiction over the parties or subject matter is void and may be attacked by any person affected by that order at any time. (*City of Chicago v. Fair Employment Practices Com.* (1976), 65 Ill. 2d 108, 357 N.E.2d 1154; *Safeway Insurance Co. v. Harvey* (1976), 36 Ill. App. 3d 388, 343 N.E.2d 679.) In the case of a collateral attack on a judgment, all presumptions are in favor of the validity of the judgment attacked, and want of jurisdiction must appear on the face of the record. *In re Estate of Leichtenberg* (1955), 5 Ill. App. 2d 336, 125 N.E. 277, *affirmed* (1956), 7 Ill. 2d 545, 131 N.E.2d 487; *Anderson v. Anderson* (1955), 4 Ill. App. 2d 330, 124 N.E.2d 66.

Our task is thus to examine the record before us in order to determine the merits of plaintiff's argument that the court in the 1952 condemnation proceeding lacked jurisdiction over Chicago Trust Company.

The petition to condemn recites *inter alia*:

"* * * that Riverside Plaza Corporation and Chicago Trust Company, Trustee Under Trust Agreement No. 1474 are the owners in fee simple title to Lot 111 in H. Roy Berry's Pine Haven Subdivision above described and La Salle National Bank is successor to Chicago Trust Company, a corporation * * *."

The affidavit of nonresidence, a prerequisite to jurisdiction by publication, names Riverside Plaza Corporation and other defendants, but does not include either Chicago Trust Company or LaSalle National Bank.

The judgment order provides in pertinent part:

"This cause coming regularly on to be heard upon the trial call of this Court to ascertain the just compensation to be paid for the taking by the Petitioners for the uses and purposes set out in the Petition herein of the property described in the Petition, *due notice having been given to the Respondents by the service of summons and by the publication of notices,* * * * and the Respondents having failed to appear herein, and it appearing to the Court that service of summons has been had upon Joseph T. Baran, Registrar of Titles, Cook County, Illinois, more than twenty (20) days prior to the 3rd day of November, 1952, the return day of this cause;

And it further appearing to the Court that *due service of process and notice of the pendency of this suit has been given to the defendants,* William H. Millar, George Winter, Katie Winter, Alice M. Langdon, LaSalle National Bank, and 'Unknown Owners', et. al *by publication of notice* in the Chicago Daily Law Bulletin, a secular newspaper of general circulation throughout Cook County. The first publication of the said notice was on October 2nd, 1952, the second publication on October 9th, 1952, and the last publication on October 16th, 1952,

And it further appearing to the Court that *this Court has jurisdiction of the parties hereto and of the subject matter hereof, and all parties interested being before the Court* * * *." (Emphasis added.)

The above order was entered on December 22, 1952. On the same day the trial judge entered an order dismissing LaSalle National Bank as a party-defendant.

In this appeal, plaintiff argues, and we agree, that jurisdiction by publication was never had with respect to Chicago Trust Company. Although jurisdiction by publication was presumably effected over LaSalle National Bank (see judgment order) LaSalle was dismissed as a party to the suit. However, this does not preclude the possibility that *personal* service was made to Chicago Trust Company. (See *Reedy v.*

*Camfield* (1896), 159 Ill. 254, 42 N.E. 833.) The judgment order specifically recites that due notice had been given to the "respondents" by "the service of summons" and "publication of notices." In the petition to condemn, Chicago Trust Company was listed as a respondent. Plaintiff fails to persuade us that there is evidence in the record that personal service was not effected upon Chicago Trust Company.

Similarly, plaintiff's contention that the affidavit for publication is so defective as to render the judgment void must also fail.

Section 14 of the Civil Practice Act (Ill. Rev. Stat. 1951, ch. 110, par. 138) provided in relevant part:

> "Whenever, in any civil action affecting property or status within the jurisdiction of the Court, * * * plaintiff or his attorney shall file, at the office of the Clerk of the court in which his suit is pending, an affidavit showing that the defendant resides or has gone out of this State, or on due inquiry cannot be found, or is concealed within this state, so that process cannot be served upon him, and stating the place of residence of such defendant, if known, or that upon diligent inquiry his place of residence cannot be ascertained, the Clerk shall cause publication to be made in some newspaper published in the county where the suit is pending * * *."

The affidavit filed in the instant case reads as follows:

> "Frances M. Peciva, being first duly sworn, upon oath deposes and says that she is the duly authorized agent for the Petitioners herein and duly authorized to make this affidavit. This affiant further says that upon due and diligent search and inquiry she has been unable to find the following named defendants in the County of Cook and State of Illinois, so that process can be served upon them or either of them: WILLIAM H. MILLAR, ELIZABETH B. MILLER, ROBERT J. BELL and GRACE O. BELL, his wife, JOSEPH GOLDBERG and MINNIE GOLDBERG, his wife, MYNOT R. HOUGH and LUCILLE HOUGH, his wife, HENRY A. PENTE, MIMI G. PENTE, and MARY E. GERDON, and PAUL M. GERDON, her husband, RIVERSIDE PLAZA CORPORATION, DALE D. SHEETS and 'UNKNOWN OWNERS';
>
> That after due and diligent inquiry and search the addresses of none of the above named defendants could be located in the County of Cook and State of Illinois, so that service can be had upon them or either of them, and that the said defendants cannot be found within the County of Cook and State of Illinois.
>
> Affiant further says that after due and diligent search and inquiry the address of 'UNKNOWN OWNERS' cannot be found in the County of Cook and State of Illinois, so that service can be had upon them or either of them."

Plaintiff argues that the statutory requirements were not satisfied because of the repeated geographic limitation to County of Cook and State of Illinois in the affiant's inquiries. We do not agree.

■■ "The provision for 'due inquiry' is not intended as a *pro forma* or useless phrase, requiring only perfunctory performance, but, on the contrary, requires an honest and well-directed effort to ascertain the whereabouts of a defendant by an inquiry as full as circumstances can permit. (*Graham v. O'Connor*, 350 Ill. 36, 40-41, 182 N.E. 764, 766; *Romain v. Lambros*, 12 Ill. App. 2d 64, 68, 138 N.E.2d 704, 706.)" *City of Chicago v. Leakas* (1972), 6 Ill. App. 3d 20, 284 N.E.2d 449, 455.

■■ We believe that under the present circumstances, the limitation of the search within the State of Illinois was sufficient. We further find that in the crucial respects, substantial compliance with the statute was accomplished.

Since we find that defendants were empowered to and did acquire a fee simple absolute in the 1952 condemnation proceeding and further that the judgment order was valid and cannot now be collaterally attacked, we hold that the trial court properly ordered that summary judgment be granted in favor of defendants as to both counts of plaintiff's amended complaint. Accordingly, we affirm.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.