**BLOOMER SHIPPERS ASSOCIATION, et al., Plaintiffs-Appellants,**

v.

**ILLINOIS CENTRAL GULF RAILROAD COMPANY, Defendant-Appellee.**

No. 80–2517.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 24, 1981.

Decided July 28, 1981.

David L. Curl, Danville, Ill., for plaintiffs-appellants.

Joseph W. Phebus, Urbana, Ill., for defendant-appellee.

Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge, and MAROVITZ, Senior District Judge.*

CUMMINGS, Chief Judge.

Plaintiffs appeal from a district court order granting summary judgment in favor of defendant Illinois Central Gulf Railroad Company (Illinois Central) on plaintiffs' claims under the Interstate Commerce Act (49 U.S.C. § 1 *et seq.*) and dismissing for failure to state a cause of action plaintiffs' claims under Section 1 of the Civil Rights Act of 1871 (42 U.S.C. § 1983). We affirm.

* The Honorable Abraham Lincoln Marovitz, Senior District Judge of the Northern District of Illinois, is sitting by designation.

I

This litigation arises from a controversy concerning the level of services provided plaintiffs by Illinois Central on the Bloomer Line, a 63-mile-long rail line extending from Herscher, Illinois, to Barnes, Illinois. Plaintiffs are the Bloomer Shippers Association, a non-profit unincorporated association consisting of farmers and shippers along the Bloomer Line, and some of its members. Each of the commercial shippers in the Association leases and has built improvements on Illinois Central-owned land adjacent to the Bloomer Line.

On August 25, 1977, plaintiffs filed a complaint with the Interstate Commerce Commission (Commission) charging that Illinois Central had failed to provide adequate service and had subjected shippers to undue discrimination on the Bloomer Line in violation of the Interstate Commerce Act. Two months later, Illinois Central filed with the Commission an application for a certificate of public convenience and necessity permitting abandonment of the Bloomer Line. The two actions were consolidated, and on December 5, 1978, an Administrative Law Judge denied the abandonment application and found that Illinois Central had violated 49 U.S.C. §§ 10741 and 11101.[1] He ordered Illinois Central to upgrade the Bloomer Line, but did not award damages to plaintiffs. Both plaintiffs and Illinois Central filed administrative appeals, and on October 12, 1979, the Commission's Division I, reversing the Administrative Law Judge, approved the abandonment and found that Illinois Central had not committed violations of the Interstate Commerce Act as charged. These decisions were affirmed by the full Commission on December 2, 1980, in an opinion reported at 363 I.C.C. 690.

Prior to the start of the above-described administrative proceedings, Illinois Central had stopped service to plaintiff Anchor Grain Company. On March 15, 1978, on complaint and motion of the United States

1. See note 4 *infra.*

Department of Justice and the Interstate Commerce Commission, Judge Ackerman of the Southern District of Illinois issued a preliminary injunction prohibiting Illinois Central from denying service to Anchor Grain Company (Case No. 78–C–3025). Anchor Grain Company and other shippers on the Bloomer Line had intervened in that action seeking injunctive relief and damages. In December 1978, while the administrative proceedings were ongoing and Illinois Central's appeal from the preliminary injunction was pending before this Court, the Department of Justice filed an indictment against Illinois Central alleging a criminal violation of 49 U.S.C. Section 41(1) on the ground that it solicited Anchor Grain Company's dismissal of the above-mentioned August 25, 1977, complaint with the Commission in return for the reinstatement of leases Illinois Central had cancelled in October. In January 1979, Illinois Central pleaded guilty to that charge, and the parties entered into a settlement agreement under which the appeal from the preliminary injunction was dismissed and a permanent injunction entered prohibiting Illinois Central from ceasing service to Anchor Grain without authorization from the Commission. A copy of the settlement was presented to Judge Ackerman, and on January 4, 1979, he dismissed with prejudice the complaint of Anchor Grain Company and the other intervening shippers.

Plaintiffs filed the present action in the district court for the Central District of Illinois on October 26, 1979. The complaint alleged that Illinois Central, in retaliation for plaintiffs' complaint to the Commission and opposition to the abandonment, had unlawfully discontinued service to Anchor Grain Company; terminated plaintiffs' leases; brought forcible entry and detainer actions in state court to evict three of the plaintiffs; attempted to amend plaintiffs' offer to purchase lease site agreements with a clause providing that Illinois Central does not guarantee any continuing rail service and that purchasers will not oppose any Illinois Central abandonment application; and, when plaintiffs would not accept the amendment, refused to permit plaintiffs to purchase their respective lease sites.

Count I of the complaint alleged that these actions constituted deprivations of plaintiffs' constitutional and statutory rights under color of state law in violation of 42 U.S.C. § 1983 and sought $100,000 in compensatory damages and $500,000 in punitive damages plus interest, costs and attorney's fees under 42 U.S.C. § 1988. Counts II and III were pendent state law claims.

On March 7, 1980, after a hearing, the district court granted Illinois Central's motion to dismiss with respect to Count I on the grounds that the actions complained of did not involve "state action" as required by 42 U.S.C. § 1983. The court did not rule on the remaining pendent counts because plaintiffs were given leave to file an amended Count I based on the Interstate Commerce Act.

On April 14, plaintiffs filed their amended complaint. Count I of that pleading paralleled the original Count I except that instead of being based on Section 1983 of the Civil Rights Act, the substitute Count I asserted that Illinois Central had violated numerous provisions of the Interstate Commerce Act. Under the amended Count I, plaintiffs sought $70,000 in damages for the Association, $1,200,000 in compensatory damages for the members of the Association, plus reasonable attorney's fees, a declaration that the leases between the Illinois Central and the various plaintiffs are void and unenforceable because they may be terminated without cause or justification upon 60 days' notice, and a declaration that the lease agreements are invalid because they provide that all property remaining on lease sites after termination of the leases becomes the property of Illinois Central.

On June 3, Illinois Central filed a motion to dismiss Count I of the amended complaint on various grounds. Exhibits were attached to this motion as well as to plaintiff's June 11 reply thereto. On September 30, Judge Baker filed a six-page opinion treating defendant's second motion to dismiss as one for summary judgment. He

concluded that the provisions of the Interstate Commerce Act on which plaintiffs relied were inapplicable, that plaintiffs were barred by the doctrine of *res judicata* and that the statutory provisions were not enforceable by private parties such as plaintiffs. Accordingly, he awarded summary judgment to Illinois Central on Count I and dismissed the pendent counts without prejudice for want of federal jurisdiction. This appeal followed.

## II

■ Illinois Central has urged us not to consider original Count I because it was replaced by substitute Count I. Nevertheless, the substitute, based solely on violations of the Interstate Commerce Act, was imposed by the court's *force majeure* and without plaintiffs' waiving the validity of the original Count I based on Section 1983. Therefore we do consider the validity of the original Count I, on which plaintiffs principally rest their appeal.

To support jurisdiction under Section 1983, Count I of the original complaint asserted that Illinois Central's rates, regulations and practices for its services are "subject to notification to the State of Illinois, Department of Transportation, and the Illinois Commerce Commission" and that the railroad is regulated by the State of Illinois with respect to its intrastate activities. The complaint also asserted that as a regulated monopoly and public utility, Illinois Central has eminent domain powers and that the Illinois Commerce Commission has the power to approve or disapprove any lease, sale or exchange of property by Illinois Central. According to plaintiffs, sufficient state action to state a claim under Section 1983 was alleged. We disagree.

■ Although the Illinois Central is "a heavily regulated utility," there is not "a sufficiently close nexus between the State and the challenged action[s] of the regulated entity so that the action[s] of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477. Its monopoly status is insufficient (at 351–352, 95 S.Ct. at 453–454). Its obligation to furnish service is not a state function, and the fact that it is a business affected with the public interest does not make it a state actor (at 353, 95 S.Ct. at 454–455). Its termination of service on the Bloomer Line is not state action (at 354, 95 S.Ct. at 455). The approval for practices by a state commission does not "transmute a practice 'initiated by the * * * [railroad] and approved by the commission into state action' " (at 357, 95 S.Ct. at 456). Similarly, the carrier's exercise of a choice allowed by state law where the initiative comes from it does not make its action state action (*ibid.*).

■ Illinois Central's forcible entry and detainer actions against some of plaintiffs do not satisfy Section 1983, for the use of a courthouse is not state action. *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185. State regulation does not make any discriminatory actions of the Illinois Central state action. *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627. Since General Order 175 of the Illinois Commerce Commission does not require filing or approval with respect to real estate sales and leases in the lesser amounts involved here, plaintiffs' allegations about those subjects also fail to show state action.

■ In short, the actions complained of by these plaintiffs were neither authorized by Illinois nor an exercise of eminent domain power.[2] Count I of the initial complaint was properly dismissed for want of state action. *Lucas v. Wisconsin Electric Power Co.*, 466 F.2d 638 (7th Cir. 1972), certiorari denied, 409 U.S. 1114, 93 S.Ct. 928, 34 L.Ed.2d 696.

---

2. Plaintiffs' motion to strike supplemental evidence is denied because they have forcefully replied to such matter, and it was submitted at the request of the Court. The supplemental evidence merely confirms what the Illinois Central had advised the Court, *viz.*, no eminent domain acquisitions from plaintiffs. Even if the Illinois Central had threatened to use its eminent domain power to obtain real property, that would not vitiate a contract to sell it. *Mattion v. Trustees of Schools*, 2 Ill.App.3d 1035, 1038, 279 N.E.2d 66 (1st Dist. 1971).

## III

Count I of plaintiffs' amended complaint asserts a claim for relief based on the Interstate Commerce Act (Act) for Illinois Central's refusal to service plaintiff Anchor Grain Company from January to March 1978. The district court held that to the extent such claim is cognizable under the Act,[3] it is barred by the doctrine of *res judicata* because of Judge Ackerman's 1979 order in Case No. 78–C–3025. As noted earlier, that case arose on a complaint filed by the United States Department of Justice and the Interstate Commerce Commission and resulted, pursuant to a settlement agreement, in a permanent injunction prohibiting Illinois Central from terminating service to Anchor Grain until authorized to do so by the Commission. The conduct complained of in the present suit is precisely the same conduct that was at issue in the first suit. Anchor Grain and certain shippers who are plaintiffs here intervened in that action, and their complaint seeking damages and injunctive relief was dismissed with prejudice on January 4, 1979. This was a final adjudication on the merits, triggering the doctrine of *res judicata. Martino v. McDonald's System, Inc.*, 598 F.2d 1079 (7th Cir. 1979).

Plaintiffs, having failed to seek post-judgment relief from Judge Ackerman's fi-nal order, now argue that *res judicata* is inappropriate because they did not have a full opportunity to present evidence in the first proceeding, because they did not stipulate that they were waiving any future actions against Illinois Central and because their complaint was erroneously dismissed with prejudice. However, it is elementary that a "judgment on the merits [is] an absolute bar to relitigation between the parties and those in privity with them of every matter offered and received to sustain or defeat a claim and to every matter which might have been received for that purpose." *Martino v. McDonald's System, Inc., supra*, 598 F.2d at 1083. Thus as to those with standing the district court correctly entered summary judgment in favor of Illinois Central on the claims arising from the subject matter before Judge Ackerman in the earlier litigation.

Count I of the amended complaint also asserts claims for damages and injunctive relief on the basis of 49 U.S.C. §§ 10711, 10741, 11101, 10904(a)(2)(B), 11903 and 11907 for Illinois Central's allegedly retaliatory leasing practices. Judge Baker held that Sections 10741 and 11101 are wholly inapplicable to the wrongs alleged [4] and that none of the remaining provisions expressly or impliedly creates a private

---

**3.** The district court stated that Anchor Grain Company had standing under 49 U.S.C. § 10903, which requires a carrier to secure the Commission's permission before terminating any rail service, and arguably under 49 U.S.C. § 10741(b), which prohibits carriers providing transportation or "service subject to the jurisdiction of the Commission" from unreasonably discriminating against customers.

Some of the plaintiffs before Judge Baker were not involved in the earlier case before Judge Ackerman, but Count I of the complaint before Judge Baker complained of Illinois Central Gulf's lease cancellations, and threatened lease cancellations were also involved before Judge Ackerman. Assuming *arguendo* that their privity does not bar the additional plaintiffs under the doctrine of *res judicata*, they have no standing to assert a violation of 49 U.S.C. § 10903 because, as Judge Baker properly held, they have no right to complain of the termination of rail service to the Anchor Grain Company, the only shipper whose rail service

had already been terminated by defendant (App.5).

**4.** Section 10741(a) prohibits a carrier from charging one customer "different compensation" for a service rendered "in transportation" than it charges others for like service. Section 10741(b), as noted *supra* note 3, prohibits unreasonable discrimination by carriers providing transportation or "service subject to the jurisdiction of the Commission." Section 11101 requires a carrier providing transportation or "service subject to the jurisdiction of the Commission" to provide the transportation or service "on reasonable request." The Commission's jurisdiction under the Act is confined to "transportation." 49 U.S.C. § 10501. "Transportation" as defined in 49 U.S.C. § 10501 refers only to the movement of passengers or property or such directly related services as the receipt and storage of goods. Judge Baker concluded that Congress did not intend "transportation" to include such proprietary activities as a carrier's arrangements with its lessees.

cause of action.[5] Plaintiffs do not dispute Judge Baker's specific holdings, but instead now rely solely on former Sections 41(1) and 43 to argue that the district court erred.

■ Former Section 41, which is now recodified in 49 U.S.C. §§ 10903 and 10905, defined certain criminal offenses, including that to which Illinois Central pleaded guilty in 1979. See pp. 774–775 *supra*. Section 43 gave the Interstate Commerce Commission power to obtain injunctions through the Attorney General and the United States Attorneys to enforce tariffs or require discontinuance of discriminations. Section 43 concludes with the following phrase:

" * * * the proceedings provided for by sections 41, 42, or 43 of this title shall not preclude the bringing of suit for the recovery of damages by any party injured, or any other action provided by said Act * * *."

Section 43 was repealed on October 17, 1978, nine days before this lawsuit was filed, and the quoted phrase does not appear in replacement Section 11703. However, assuming, as plaintiffs contend, that Congress did not intend to repeal this language, it is of no assistance to plaintiffs because it does not create a private cause of

action but merely establishes that government enforcement proceedings do not bar injured parties from bringing authorized damage suits. In short, a plaintiff must find a private remedy elsewhere in the Act (e. g., 49 U.S.C. §§ 11705 and 11707) before invoking the protection of the language in Section 43. This plaintiffs are unable to do.

■ Finally, we note that in *Chicago and North Western Transportation Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, ——, 101 S.Ct. 1124, 1132–33, 67 L.Ed.2d 258, the Supreme Court recently stated "There is no provision in the [Interstate Commerce] Act for a civil damages action against a carrier for an abandonment that has [as here [6]] been approved by the Commission. The structure of the Act thus makes plain that Congress intended that an aggrieved shipper should seek relief in the first instance from the Commission" because "as to abandonments, this authority [to regulate rail carriers' cessation of service on their lines] is exclusive." The *Kalo* Court added that where as here "the carrier's actions have been approved by the Commission, there has been no violation of the Act, and this damage remedy [49 U.S.C. § 11705] could have no application in this case." Therefore, under *Kalo*, the proper remedy for

---

**5.** Section 10711 provides that a carrier defense of "necessary in the public interest" does not legalize a competitive practice that is otherwise unfair, destructive, predatory, or undermining of competition. Judge Baker correctly explained that this Section has an interpretative purpose only and does not contain any prohibitions from which a private cause of action can be implied.

Section 10904(a)(2)(B) provides for a carrier seeking a certificate of abandonment to give notice that interested persons are entitled to recommend appropriate action to the Commission with respect to the abandonment application. Judge Baker concluded that this Section is a "directory provision" only and noted in addition that plaintiffs did not allege that Illinois Central had failed to comply with this Section but instead alleged that the purpose of the Section was undermined by Illinois Central's alleged retaliatory threats and actions.

Section 11903 makes it a crime for a carrier to practice discrimination, and Section 11907 makes it a crime for a person to give to a railroad employee or a railroad employee to receive "anything of value" intended to influence action "related to supply, distribution, or

movement of cars, vehicles, or vessels used in transportation of property." Since both provisions are purely criminal, Judge Baker held that plaintiffs were not entitled to enforce them through civil damage suits. These rulings accord with the Supreme Court's present reluctance to imply private causes of action. See *Universities Research Association, Inc. v. Coutu*, 450 U.S. 754, 101 S.Ct. 1451, 67 L.Ed.2d 662.

**6.** The Bloomer Line abandonment was approved by the full Commission on December 2, 1980. In *Kalo* the Court noted that it was immaterial to its decision that as here the lawsuit was filed before the full Commission had acted. 450 U.S. 325, 101 S.Ct. 1134. Division I of the Commission had ruled against the present plaintiffs by decision served October 12, 1979, six months before the first amended complaint was filed in the district court.

The doctrine of primary jurisdiction is of no avail to the Illinois Central because the full Commission decided for the carrier on December 2, 1980, more than a year before this appeal was reached for argument.

these plaintiffs lies in a suit to review the Commission's order denying plaintiffs damages and approving the abandonment of the Bloomer Line, holding as well that the Illinois Central had not unlawfully failed to provide adequate service nor had subjected shippers to undue discrimination. Just such a suit was filed by plaintiffs in this Court on February 13, 1981 (Seventh Circuit No. 81–1233), so that our affirmance of Judge Baker's decision does not leave them remediless.

Since the district court correctly held that Count I of the complaint and Count I of the amended complaint were deficient, there was no jurisdiction to consider pendent Counts II and III.

The court's March 7, 1980, order dismissing Count I of the original complaint and its September 23, 1980, order granting Illinois Central summary judgment are affirmed.