Billy Joe HIGBEE, a resident of the State of Arkansas, Appellant,

v.

Joe Fred STARR, d/b/a Poultry Growers, Inc. and/or Bi-State Energy, Inc., Tyson Foods, Inc., an Arkansas corporation, George Harmon, a resident of the State of Arkansas, Mary Ruth Sallee, a resident of the State of Arkansas, Appellees.

No. 82–2096.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 28, 1983.

Decided Feb. 2, 1983.

Cypert & Roy, Springdale, Ark., Everett & Whitlock, Prairie Grove, Ark., for appellees.

John Frederick Arens, Terry R. Kirkpatrick, Fayetteville, Ark., for appellant.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and FAGG, Circuit Judge.

PER CURIAM.

Billy Joe Higbee filed a complaint in federal district court alleging that some of the defendants, the owners of a nearby hog farm, were polluting the White River. Higbee maintained that the defendants were

violating the Federal Water Pollution Control Act, and she also asserted various violations of state law. Among the counts was a claim alleging that the defendants and Mary Sallee, her landlord, were attempting to evict her from her residence in retaliation for her filing the lawsuit. She sought damages and preliminary and permanent injunctions to prevent her eviction.

This appeal is from an order of the district court[1] denying Higbee's motion for a preliminary injunction. The court listed two alternate reasons: (1) the issue of retaliatory eviction was decided in an Arkansas state court proceeding brought by the defendants against the plaintiff for unlawful detainer, and thus is res judicata; and (2) considering that Higbee has no chance of success on the merits, hardship to the parties, and the public interest, the balance tilts in favor of the defendants. *Dataphase Systems, Inc. v. C.L. Systems,* 640 F.2d 109 (8th Cir.1981). We affirm.

The district court found that "[w]hile plaintiff's eviction will result in irreparable injury, the court concludes that she has no probability of success on the merits," and that this was true even assuming res judicata did not apply. While we disagree that Higbee has no chance of success, her chances of maintaining possession of the premises appear to be slim indeed, and we are unable to find that the district court abused its discretion in denying the preliminary injunction.

It is Higbee's contention that a retaliatory eviction violates 42 U.S.C. § 1983 because (1) an eviction in retaliation for reporting violations of the FWPCA infringes rights protected by the Constitution and by federal law; and (2) such retaliatory eviction, since it is accomplished through the state courts, constitutes state action.

■ Higbee's state action argument is based on cases involving landlords who evicted tenants in retaliation for reporting housing code violations. Those cases are inconclusive.[2] The Supreme Court recently considered § 1983 and the state action requirement in *Lugar v. Edmondson Oil Co.,* —— U.S. ——, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). There, the Court held that whether a constitutional deprivation is effected by state action depends on two things: one, whether the deprivation has resulted from the exercise of a right or privilege having its source in state authority; and, two, whether the private parties may appropriately be characterized as state actors. *Lugar,* 102 S.Ct. at 2755. Higbee's complaint appears to be directed toward the defendant's improper use of the Arkansas eviction statute—*i.e.,* using a state procedure for the improper purpose of evicting a month-to-month tenant in retaliation for the exercise of constitutional rights. Under *Lugar,* this would not be state action.

Even assuming that Higbee could show state action and otherwise make out a cause of action under § 1983,[3] it is far from clear that she can prove that Sallee's actions con-

---

1. The Honorable Henry Woods, United States District Judge, Eastern District of Arkansas.

2. In *Edwards v. Habib,* 397 F.2d 687 (D.C.Cir. 1968), *cert. denied,* 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969), the District of Columbia Circuit found that the District of Columbia's housing code "indicate[d] a strong and pervasive congressional concern to secure . . . safe and sanitary places to live," and thus held that a defense of retaliatory eviction must be allowed in a suit for unlawful detainer. The court discussed at length whether court enforcement of a retaliatory eviction would constitute state action, but did not decide the issue. 397 F.2d at 690–98. In *Mattingly v. Elias,* 482 F.2d 526 (3d Cir.1973), the Third Circuit held that there was no need to dismiss a § 1983 challenge to a Pennsylvania eviction statute

merely because no state court had ruled on the retaliatory eviction issue. However, the court expressly did not decide whether state action existed. *Mattingly,* 482 F.2d at 528 n. 4. *Cf. Bloomer Shippers Ass'n v. Ill. Central Gulf Railroad Co.,* 655 F.2d 772, 776 (7th Cir.1981) (in action for retaliatory eviction by lessee against railroad, a court held use of courthouse by railroad in unlawful detainer suit was not state action.)

3. There is a question whether Higbee has an implied right under the FWPCA to report a violation of that law, and whether that right can be enforced in a § 1983 action. *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).

stituted retaliatory eviction. In proffers of proof before the state court, and in depositions taken in federal action, the following acts emerged: In February, 1981 Higbee complained to Joe Fred Starr about water pollution resulting from his hog farm. In late January, 1982 Ken Bartholomew, an agent of Starr's corporation, Bi-State Energy, contacted Sallee about leasing the farmhouse and land Higbee currently rented. Soon after, Sallee gave Higbee thirty days' notice to be out by March 1. At this time, Higbee told Sallee of an impending lawsuit. On February 8, 1982 Higbee gave notice to Starr, Tyson Foods, and state and federal agencies of her intent to bring suit for violation of FWPCA.[4] In mid-February Sallee entered into a written lease with Bi-State to rent the premises for $75.00 a month, beginning March 1. (Higbee was paying $50.00.) Sallee later stated that her reason for ending Higbee's tenancy was the large number of uncontrolled animals Higbee kept on the property. After Bi-State and Sallee filed suit for unlawful detainer, Starr met with Higbee's attorney, Terry Kirkpatrick, and told her that if Higbee would drop the FWPCA suit, she could stay in the farmhouse.

■ These facts, if proved, might be sufficient to show that Bi-State wanted to rent the farmhouse in order to retaliate against Higbee. However, Sallee's motives are much less clear. She had no interest in the FWPCA lawsuit, and has stated throughout the course of the litigation that Higbee kept a large number of uncontrolled animals on the property which damaged the house and caused problems with neighbors. On this evidence, there may well be no improper connection between Sallee's decision to terminate Higbee's lease and Higbee's lawsuit against Starr and Bi-State. Such an improper connection would be a necessary requirement for proving retaliatory eviction by Sallee. *Cf. Davis v. Village*

*Park II Realty Co.,* 578 F.2d 461 (2d Cir. 1978) (in action for damages for retaliatory eviction, plaintiff must prove that "protected conduct was a substantial motivating factor in the decision to terminate [the] lease.").

■ Denial of the preliminary injunction deprived Higbee of a place to live, and constituted irreparable harm, as the district court acknowledged. Further, the public has an interest in protecting people who report violations of the law. But even though the public interest and the harm to the parties appear to favor Higbee, as has been seen it is highly doubtful that she will succeed on the merits. As indicated, we cannot find that the district judge's decision that the overall balance was in the defendants' favor was an abuse of discretion.[5]

Accordingly, the judgment of the district court denying injunctive relief is affirmed.

---

4. Such notice is a statutory prerequisite to suit under the FWPCA. 33 U.S.C. § 1365(d).

5. We note that a motion to dismiss Higbee's claim for damages and a permanent injunction on res judicata grounds is pending before the district court. We express no opinion on the merits of the res judicata issue other than to say that the question is a serious one which further militates against appellant on this appeal.